Shirley J. EVANS, Plaintiff,

v.

**JAY INSTRUMENT AND SPECIALTY COMPANY, et al. Defendant.**

No. C–1–93–0055.

United States District Court,
S.D. Ohio,
Western Division.

April 26, 1995.

Shirley J. Evans, Cincinnati, OH, pro se.

Phyllis B. Schiff, Cincinnati, OH, for plaintiff.

Bruce Andrew Hoffman, Graydon, Head & Ritchey, Cincinnati, OH, for defendant.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the court upon the motion of defendant, Jay Instrument and Specialty Company (Jay Instrument) for summary judgment. (Doc. No. 20). Plaintiff Ms. Shirley J. Evans (Evans), proceeding *pro se*, has responded in opposition to such motion. (Doc. No. 23). For the reasons set forth, *infra*, Jay Instrument's motion for summary judgment is well taken.

### I. Introduction

Evans' complaint alleges that Jay Instrument unlawfully discriminated against her because of her race and gender. (Doc. No. 3). Evans additionally claims that Jay Instrument unlawfully retaliated against her. (Doc. No. 20, Ex. 2, and Doc. No. 23, Ex. D(3)). Jay Instrument contends that Evans was legitimately and non-discriminatorily discharged. (Doc. No. 20, Ex. 3).

### II. Procedural Background

On October 4, 1991, the date of her one-day suspension, Evans filed an Equal Employment Opportunity Commission (EEOC) charge of race and gender discrimination against Jay Instrument. (Doc. No. 20, Ex. 1). On February 22, 1992, five days after her discharge, Evans filed a second charge of race and gender discrimination and retaliation against Jay Instrument. (Doc. No. 20, Ex. 3). On July 17, 1992, the EEOC issued its determination, concluding that the evidence presented in her first charge did not establish a finding of discrimination. (Doc. No. 20, Ex. 2). On August 26, 1992, this court entered an order tolling the 90–day limitation period in which an employment discrimination action had to be instituted. (Doc. No. 20). On October 19, 1992, the EEOC issued its determination, finding no discrimination or retaliation as to plaintiff's second charge. (Doc. No. 20, Ex. 4). On December 18, 1992, plaintiff, proceeding pro se, filed two complaints with this court, claiming race and gender discrimination, as well as retaliation. (Doc. Nos. 3 and 6).[1]

### III. Factual Background

From 1990 to 1992, Evans, an African-American female, was employed by Jay Instrument as a purchasing clerk II. (Doc. No. 20, Ex. 1 and 5). In that position, Evans prepared purchase orders, keyed in acknowledgements, typed certifications, and relieved the switchboard operation. (Doc. No. 20, Ex. 5). McCarthy, a caucasian male, supervised Evans. (Doc. No. 20, Ex. 1).

On February 27, 1991, McCarthy gave Evans a substandard performance appraisal. (Doc. No. 20, Ex. 5a). In the evaluation, McCarthy noted that certifications had been typed incorrectly. (Doc. No. 20, Ex. 5a). McCarthy further informed Evans about purchase order errors, incorrect vendor number designations, wrong inventory numbers, wrong quantities, and substandard switchboard relief. (Doc. No. 20, Ex. 5a). McCarthy also criticized Evans for her negative work attitude:

---

1. One of Evans' complaints was filed against Jay Instrument. (Doc. No. 3). The other complaint was lodged against Evans' supervisor, Mr. Richard McCarthy (McCarthy). (Doc. No. 3). Within her two process receipts and returns, Evans named only Jay Instrument as the defendant. (Doc. No. 6). Further, Evans' subsequent filings with this court point to Jay Instrument as the claimed discriminating entity. (Doc. No. 23). This court, therefore, concludes that Jay Instrument, not McCarthy, is the intended defendant in this case.

At this time I would also like to point out the following verbal discussions I have had with Shirley during the past two months concerning her attitude. First, with tasks [sic] assignments involving FOB codes. When instructed to use FOB SP, she countered that she could not do [it] because she was told to code differently[,] except for dresser instruments. I explained that I had given that direction months ago[,] but since so much confusion was presented from our suppliers, I decided to rescind that directive. She replied in a non-supportive manner in disgust.

(Doc. No. 20, Ex. 5a). In July of 1991, computer records revealed that Evans erased master pricing on more than 10,000 items. (Doc. No. 20, Ex. 5(b)). This erasure resulted in several regular and overtime hours to restore the necessary information. (Doc. No. 20). In September of 1991, McCarthy noted deficiencies in Evans' math, language and interpersonal skills. (Doc. No. 20, Ex. 5c). In October of 1991, McCarthy informed another Jay Instrument official as to Evans' inability to calculate an average, as well as her refusal to follow certain orders. (Doc. No. 20, Ex. 5d). On October 4, 1991, Evans was given a one day suspension from work. (Doc. No. 20, Ex. 1, 2 and 5d). On that day, Evans filed an EEOC charge against Jay Instrument, claiming race and sex discrimination. (Doc. No. 20, Ex. 3).

In November of 1991, McCarthy was notified by another Jay Instrument official that Evans was not properly printing certification papers on company letterhead. (Doc. No. 20, Ex. 5e–1). That same month, others at Jay Instrument informed McCarthy on problems they were having with Evans' work ethic and attitude. (Doc. No. 20, Ex. 5k–1). In December of 1991, McCarthy again noted errors in Evans' work. (Doc. No. 20, Ex. 5e–4). In January of 1992, McCarthy asked Evans to correct errors in her work. (Doc. No. 20, Ex. 5g). McCarthy also documented that Evans "used an unfriendly tone and demonstrated a lack of respect for others while working on the switchboard:"

On January 22, 1992, Shirley Evans used an unfriendly tone and demonstrated a lack of respect for others while working on the switchboard. Her unprofessional behavior was witnessed by our company president, vice-president and by whomever was calling [Jay Instrument]. I have decided that Shirley can no longer perform this task within her job description. We cannot risk goodwill with customers, suppliers and fellow employees with this employee.

(Doc. No. 20, Ex. 5n).

On February 17, 1992, Evans was discharged. (Doc. No. 20, Ex. 4 and 5). According to Jay Instrument, it "concluded that the workload was such that it was not necessary to replace her." (Doc. No. 20, Ex. 5). From January 1, 1990, to the February 17, 1992, termination date, Jay Instrument reports it terminated two caucasian males and two caucasian females for performance and attendance problems. (Doc. No. 20, Ex. 2 and 5).

## IV. Discussion

### a.) Summary Judgment Standard

Fed.R.Civ.P. 56(c), in pertinent part, provides:

[Summary judgment] ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law.

■ The purpose of a summary judgment motion is not to resolve factual issues, but to determine if there are genuine issues of material fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir.1978).

In 1986, the Supreme Court issued three decisions which gave new life to Fed.R.Civ.P. 56 as a mechanism for weeding out certain claims at the summary judgment stage. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). It is well recognized that these cases brought a "new era" in

summary judgment practice. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir.1989). The three Supreme Court opinions reflect a return to the original purpose of the summary judgment motion. *Id.*

■ Accordingly, the summary judgment "standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510 (emphasis in original). Moreover, when a party cannot establish the existence of an element essential to that party's case on which the party will have the burden of proof at trial, the court must enter summary judgment against that party, pursuant to Fed. R.Civ.P. 56. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. Thus, as stated by the Supreme Court:

> When the moving party has carried its burden under [Fed.R.Civ.P.] 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non[-]moving party must come forward with "specific facts showing that there is a *genuine issue for trial.*"

*Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356 [emphasis in original; footnote and citations omitted].

■ Further, Fed.R.Civ.P. 56(e) provides: When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment[,] if appropriate, shall be entered against the adverse party.

Accordingly, mere allegations are not sufficient to defeat summary judgment.

### b.) Race and Gender Discrimination Claims

#### i.) Race and Gender Discrimination Statutory Provisions

Section 703(c) of the Civil Rights Act of 1964, 78 Stat. 253 (1964), as amended, 42 U.S.C. § 2000e–2(a)[2], provides:

> It shall be an unlawful employment practice for an employer ... to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, ... [or] sex....

■ A plaintiff may show race or gender discrimination, pursuant to 42 U.S.C. § 2000e–2(a), by use of direct or indirect evidence. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). In the case at hand, this court finds that plaintiff has not proffered direct evidence of discrimination. (Doc. No. 3 and 23). To prevail on her claims, plaintiff must, therefore, show indirect evidence of race and gender discrimination, pursuant to *McDonnell Douglas Corp. See Kuhn v. Island Creek Coal Co.*, 974 F.2d 1338, 1338 (6th Cir.1992) (in absence of direct evidence of discrimination, the framework for adjudication of a Title VII claim is set forth in *McDonnell Douglas Corp.*), *aff'd without op.*, 974 F.2d 1338 (6th Cir.1992), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 421, 126 L.Ed.2d 367 (1993). Such an indirect evidentiary showing requires plaintiff to put forth a *prima facie* case of discrimination and to rebut, as a pretext for discrimination, any business justifications put forth by the defendant to be the real reasons for the adverse employment action. *Id.*

#### ii.) Prima Facie Case

*Applicable Case Law*

■ To establish a *prima facie* case of race or gender discrimination in an employment discharge, the plaintiff must show that she (1) was a member of the protected class,

---

**2.** Congress has not codified Title VII of the Civil Rights Act, 78 Stat. 253 (1964), as amended. Nonetheless, for referencing efficiency, this opinion refers to the designated "code" section, after such section's official designation, when citing to the applicable federal statutory language.

(2) suffered an adverse employment action, (3) was qualified for the position in question, and (4) was replaced by a person not of the protected class. *Id.; Scales v. J.C. Bradford and Co.*, 925 F.2d 901, 906–907 (6th Cir. 1991).

When the plaintiff previously held the position at issue, the employer can show that the employee was not qualified for such position, by showing that such employee was not performing "at a level which met employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990); *See also, Wheelwright v. Clairol, Inc.*, 770 F.Supp. 396, 400 (S.D.Ohio 1991). As instructed by the Sixth Circuit:

> In order to show that [plaintiff] was qualified, [plaintiff] must prove that he was performing his job "at a level which met his employer's legitimate expectations." *Huhn v. Koehring Co.*, 718 F.2d 239, 243 (7th Cir.1983). Moreover, "if [plaintiff] was not doing what his employer wanted him to do, he was not doing his job.... [Plaintiff] does not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors." *Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980), [*cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981)].

*McDonald*, 898 F.2d at 1159.

Further, if the former duties of the plaintiff are merely distributed among other employees, the discharged employee is not deemed replaced. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1467 (6th Cir.1990). If the plaintiff cannot show that she was replaced, the plaintiff may still make out a *prima facie* case by establishing that similarly-situated non-protected class employees were more favorably treated. *See Shah v. General Electric*, 816 F.2d 264, 268 (6th Cir. 1987), *on remand*, 697 F.Supp. 946 (W.D.Ky. 1988).

*Case At Hand*

Evans has not put forth a *prima facie* case of race or gender discrimination. Evans has satisfied the first two components of a *prima facie* case of Title VII discrimination. Evans is a member of two Title VII protected classes. (Doc. No. 3). She is an African-American female. (Doc. No. 3). Evans has also established that she was subject to two adverse actions. (Doc. No. 20, Ex. 1 and 2). She was given a one-day suspension and later terminated from her position. (Doc. No. 3).

Nonetheless, Evans has failed to establish that she met the legitimate business expectations of her employer to be qualified for the position at issue. (Doc. Nos. 20 and 23). Evans produces no evidence to dispute Jay Instrument's specific contentions that she made purchase order, acknowledgement and certification errors. (Doc. No. 23). She does not dispute that she deleted significant computer data.[3] (Doc. No. 23). Evans does aver that two or three co-workers found her switchboard performance to be acceptable. (Doc. No. 23). However, she fails to put into question the specific instances cited by defendant as reasons for its conclusion that plaintiff's switchboard performance was, in the aggregate, inadequate. (Doc. No. 23).

In addition, Evans cannot show she was replaced by a non-protected class member or that similarly-situated non-protected class members were more favorably treated. The evidence shows that Jay Instrument did not replace plaintiff. (Doc. No. 20). To the contrary, Jay Instrument "concluded that the workload was such that it was not necessary to replace her." (Doc. No. 20, Ex. 5). Further, from 1990 to 1992, Jay Instrument terminated two caucasian females and two caucasian males for poor performance, the same reason given for plaintiff's suspension and termination. (Doc. No. 20). Plaintiff has not established that she was replaced by a non-protected class member or less favorably treated than similarly-situated non-protected class members. Therefore, this court con-

---

**3.** With regard to the deletion of data, plaintiff asserts:

> Plaintiff, allege [sic] that she had knowledge of erasing the pricing out of the system. Plaintiff

tried to explain this to Defendant, but was harass [sic] because of this.

cludes that summary judgment for defendant as to Evans' race and gender discrimination claims is appropriate.

### iii.) Legitimate Business Justification

#### Applicable Case Law

■ Assuming, *arguendo*, that plaintiff did set forth a *prima facie* case, the burden shifts to the defendant to "rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *Weems v. Ball Metal & Chemical Div. Inc.*, 753 F.2d 527, 531 (6th Cir.1985). This burden is merely one of "production" because the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

#### Case At Hand

■ Jay Instrument has set forth legitimate, non-discriminatory reasons for plaintiff's termination. (Doc. No. 20). In February of 1991, Jay Instrument apprised Evans of her substandard performance, work errors, and poor professional attitude. (Doc. No. 20, Ex. 5a). In July of 1991, Jay Instrument discovered that Evans had erased master pricing on more than 10,000 items. (Doc. No. 20, Ex. 5(b)). In September of 1991, McCarthy noted deficiencies in Evans' math, language and interpersonal skills. (Doc. No. 20, Ex. 5c). In October of 1991, Jay Instrument noted Evans' inability to calculate an average. (Doc. No. 20, Ex. 5d). In November of 1991, Jay Instrument found that Evans was not properly printing certification papers on company letterhead. (Doc. No. 20, Ex. 5e–1). That same month, others at Jay Instrument informed McCarthy of problems that they were having with Evans' work ethic and attitude. (Doc. No. 20, Ex. 5k–1). In December of 1991 and January of 1992, McCarthy again noted errors in Evans' work. (Doc. No. 20, Ex. 5e–4). This evidence clearly establishes legitimate and non-discriminatory grounds for Evans' termination.

### iv.) Pretext Issue

#### Applicable Case Law

■ Once the defendant articulates a legitimate, non-discriminatory reason for its adverse action against plaintiff, "the plaintiff must then carry her overall burden of persuasion by showing that the proffered and allegedly nondiscriminatory reasons are really pretextual...." *Newton v. CBS, Inc.*, 841 F.Supp. 19, 21–22 (D.D.C.1994) (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824); *see also St. Mary's Honor Ctr. v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993); *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094–95; *Davis v. Combustion Engineering, Inc.*, 742 F.2d at 916, 921 (6th Cir.1984); *Scales*, 925 F.2d at 906–907. The plaintiff must show that the defendant's adverse employment decision was, in fact, motivated by discrimination. *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2751–54. The employer's reasons cannot be proved to be a "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr.*, —— U.S. at ——, 113 S.Ct. at 2752 (citations and emphasis omitted).

■ The Sixth Circuit has interpreted the words of *St. Mary's Honor Ctr.* to mean that a plaintiff can show pretext in three ways. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083–84 (6th Cir.1994). While *Manzer* involved the Age Discrimination in Employment Act, 81 Stat. 602, as amended, 29 U.S.C. §§ 621–34, this court is persuaded by the language of that case that it applies equally to Title VII claims. *See Id.* First, the plaintiff can show that the proffered reasons had no basis in fact. *Id.* This first type of showing consists of evidence that the proffered bases for the plaintiff's adverse treatment never happened, i.e., that they were false. *See Id.* Second, the plaintiff can show that the reasons given by the employer were insufficient to motivate discharge. *Id.* This second showing ordinarily consists of evidence that other similarly-situated individuals were more favorably treated. *See Id.* Third, the plaintiff can

show that the defendant's proffered reason did not actually motivate the adverse action. *Id.* In order to make this third type of showing, the plaintiff must introduce additional evidence of discrimination. *Id.*

## Case At Hand

In this case, the plaintiff has not offered any evidence to show that Jay Instrument's business justifications were a pretext for discrimination. Evans has not raised a genuine issue of material fact as to whether defendant's reasons were false, insufficient, or not the real reasons for the adverse action. *See Manzer,* 29 F.3d at 1078. Plaintiff, through self-serving conclusory statements, points to a few tasks she performed adequately. (Doc. No. 23). However, as the Supreme Court and the Sixth Circuit have made clear, such bald self-serving and conclusory allegations are insufficient to withstand a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (party opposing summary judgment may not rest upon mere allegations or denial of pleading, but must set forth specific facts showing a genuine issue for trial); *Bryant v. Kentucky,* 490 F.2d 1273 (6th Cir.1974) (conclusory allegations, without more, are not enough to survive summary judgment). Plaintiff also does not dispute most of the specific instances of substandard performance cited by Jay Instrument as reasons leading to her termination. (Doc. No. 23). Plaintiff does not question the bases upon which her substandard performance evaluation was premised. (Doc. No. 23). She admits to the erasure of the data. Thus, the plaintiff has failed to show that the defendant's proffered reasons were false.

Second, there is nothing suggesting that Jay Instrument's reasons for terminating plaintiff were insufficient. From 1990 to 1992, Jay Instrument terminated two caucasian male individuals and two caucasian female individuals for poor job performance. (Doc. No. 20, Ex. 2 and 5). This was the very reason given for Evans' discharge. Thus, Jay Instrument has shown that substandard work performance is sufficient rea-

son to terminate non-protected, as well as protected class members, such as Evans.

Third, Evans provides only self-serving conclusory declarations of actual discrimination by the defendant's decision-makers. (Doc. No. 23). Evans does not go outside these conclusory statements. (Doc. No. 23). The plaintiff baldly asserts that she was mistreated because of her race and gender, and that there "is ample evidence of wrongful [d]ischarge." (Doc. No. 23). As stated, *supra,* such self-serving and conclusory allegations are insufficient to withstand a motion for summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Bryant,* 490 F.2d at 1273. Evans does complain that she was twice called "nigger" by her co-workers. However, derogatory co-worker comments do not substantiate a finding of employment discrimination, when such comments cannot be linked to the decision-maker bringing forth the adverse action. *See Cesaro v. Lakeville Community School Dist.,* 953 F.2d 252, 254-55 (6th Cir.1992) (Title VII context); *see also, Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1330 (6th Cir.1994) (ADEA context). Because Evans produces no evidence, either actual or constructive, to link these derogatory remarks to Jay Instrument's decision-makers, the statements, even if true, do not establish pretext.

In sum, the plaintiff has failed to present any evidence from which this court could reasonably infer even a suspicion of racial animus with respect to plaintiff's discharge. The plaintiff has, likewise, failed to produce any evidence of actual discrimination. This court grants summary judgment to Jay Instrument as to Evans' race and gender discrimination charges.

### c.) *Retaliatory Discharge Claim*

Section 704 of the Civil Rights Act of 1964, 78 Stat. 257 (1964), as amended, 42 U.S.C. § 2000e–3, provides:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an [em-

ployment discrimination] investigation, proceeding, or hearing. . . .

 To support a claim of retaliatory discharge, the plaintiff must put forth a *prima facie* case, showing that: (1) she was a member of a protected class; (2) she engaged in activity protected by Title VII; (3) she was subject to an adverse employment action; and (4) there was a causal link between plaintiff's protected activity and the adverse action. *Christopher v. Stouder Memorial Hosp.*, 936 F.2d 870, 877 (6th Cir.1991); *Wrenn v. Gould,* 808 F.2d 493, 500 (6th Cir. 1987).

Evans' complaint avers that Jay Instrument retaliated against her because, during her employ with the company, she filed an EEOC charge against defendant and went to the NAACP to complain about defendant. Defendant proffers no reason why plaintiff has not put forth a *prima facie* case of retaliatory discharge. Therefore, for purposes of ruling on this motion for summary judgment, this court finds that plaintiff has put forth a *prima facie* case of retaliatory discharge.

In that Evans has put forth a *prima facie* case of retaliatory discharge, Jay Instrument is required to set forth legitimate, non-discriminatory reasons for its adverse action against plaintiff. *Wrenn,* 808 F.2d at 501. As discussed above, Jay Instrument has set forth such legitimate justifications for Evans' discharge. As further set forth, plaintiff has failed to demonstrate how Jay Instrument's proffered reasons were pretextual. *See Id.* (once defendant articulates legitimate, non-discriminatory reasons, plaintiff is required to show that defendant's reasons were pretextual). Therefore, this court also grants summary judgment as to plaintiff's retaliatory discharge claim.

## V. *Conclusion*

This court **GRANTS** defendant's motion for summary judgment to defendant as to plaintiff's race and gender discrimination claims. This court **GRANTS** summary judgment to defendant as to plaintiff's retaliatory

discharge claim. Plaintiff's case is, therefore, **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**