DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Portsmouth Municipal Court summary judgment in favor of Loretta J. Cooper, defendant below and appellee herein. The trial court determined that appellee was not liable for damage that resulted when a tree fell on neighboring property.
 {¶ 2} Madeline Wertz, Individually and as Trustee of the Madeline A. Wertz Family Trust, plaintiff below and appellant herein, raises the following assignment of error:
 "THE TRIAL COURT ERRED WHEN IT GRANTED THE APPELLEE-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT."
 {¶ 3} In May of 2003, following heavy rains, a tree that sat on appellee's property uprooted and leaned into appellant's fence and into a Shriner Colorado Blue Sprue tree that sat upon appellant's property. Appellant filed a complaint against appellee and contended that appellee failed to timely remove her tree. Appellant sought damages including the cost of removing the fallen tree, the expenses to replace the damaged Blue Spruce, and other incidental damages.
 {¶ 4} Appellee requested summary judgment and asserted that she had no knowledge of a defective condition of the tree. She contended that she could not have been negligent in failing to maintain the tree and that she could not be liable for the damage when an "act of God" caused the tree to uproot.
 {¶ 5} The trial court awarded appellee summary judgment and explained:
 "There is no dispute that [appellee] had a tree on her property which fell on [appellant]'s property following a severe storm. There is further no dispute that prior to this storm [appellee] had no notice of any deteriorating condition of the tree. The Court has observed color pictures taken of the tree and there is no evidence of rotting or decaying in the tree. Therefore the Court concludes that the tree fell as a result of the storm, or an Act of God. Ohio law has consistently held that a party is not liable in negligence for damage caused by an Act of God."
This appeal followed.
 {¶ 6} In her sole assignment of error, appellant asserts that a genuine issue of material fact remains regarding whether appellee negligently maintained the tree and whether she had sufficient notice regarding the tree's condition. She further argues that the trial court wrongly determined that appellee was not liable because the tree's fall was an "act of God."
 {¶ 7} Appellee argues that no genuine issue of material fact exists regarding her actual or constructive notice of the tree's condition and that no evidence exists that she knew or should have known that the tree would uproot and lean onto appellant's property before the incident. Appellee additionally argues that the tree's fall was an "act of God," and relieved her of liability for any damages.
 A SUMMARY JUDGMENT STANDARD {¶ 8} When an appellate court reviews trial court summary judgment decisions, the appellate court must conduct a de novo review. See, e.g.,Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105,671 N.E.2d 241. Accordingly, appellate courts must independently review the record to determine whether summary judgment is appropriate. Appellate courts need not defer to trial court decisions. Brown v. Scioto Cty. Bd. ofCommrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v.Conley (1991), 75 Ohio App.3d 409, 411-412, 599 N.E.2d 786. Thus, to determine whether a trial court properly granted summary judgment, an appellate court must review the Civ. R. 56 standard for granting a summary judgment motion, as well as the applicable law. Civ. R. 56(C) provides:
 Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.
Thus, trial courts may not grant summary judgment unless the evidentiary materials demonstrate that (1) no genuine issue as to any material fact remains to be litigated; (2) after the evidence is construed most strongly in the nonmoving party's favor, reasonable minds can come to but one conclusion, which is adverse to the nonmoving party; and (3) the moving party is entitled to judgment as a matter of law. See, e.g.,Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.
 {¶ 9} In responding to a motion for summary judgment, a nonmoving party may not rest on "unsupported allegations in the pleadings."Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46. Rather, Civ. R. 56 requires a nonmoving party to respond with competent evidence to demonstrate the existence of a genuine issue of material fact. Civ. R. 56(E) provides:
 * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party.
Consequently, once a moving party satisfies its Civ. R. 56 burden, the nonmoving party must demonstrate, by affidavit or by producing Civ. R. 56(C) evidence, that a genuine issue of material fact remains for trial. A trial court may grant a properly supported motion for summary judgment if the nonmoving party does not respond, by affidavit or as otherwise, with specific facts to show that a genuine issue exists for trial.Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264;Jackson v. Alert Fire Safety Equip., Inc. (1991), 58 Ohio St.3d 48,52, 567 N.E.2d 1027. Additionally, when ruling on a summary judgment motion a trial court may not weigh the evidence or choose among reasonable inferences. Dupler v. Mansfield Journal (1980),64 Ohio St.2d 116, 121, 413 N.E.2d 1187; Johnson v. Pohlman, 162 Ohio App.3d 240,2005-Ohio-3554, 833 N.E.2d 313, at ¶ 37. Rather, the court must evaluate the evidence, take all permissible inferences and resolve questions of credibility in favor of the non-moving party. Id.
 {¶ 10} We further note that "simply because resolution of a question of law involves a consideration of the evidence does not mean that the question of law is converted into a question of fact or that a factual issue is raised." Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, 68, 430 N.E.2d 935. As stated in O'Day v. Webb (1972),29 Ohio St.2d 215, 219, 280 N.E.2d 896: "[A] review of the evidence is more often than not vital to the resolution of a question of law. But the fact that a question of law involves a consideration of the facts or the evidence does not turn it into a question of fact." See, also, Henley v.Youngstown Bd. Zoning Appeals (2000), 90 Ohio St.3d 142, 148,735 N.E.2d 433.
 B NEGLIGENCE {¶ 11} A negligence action requires a plaintiff to establish that: (1) the defendant owed the plaintiff a duty of care; (2) the defendant breached the duty of care; and (3) as a direct and proximate result of the defendant's breach, the plaintiff suffered injury. See, e.g.,Texler v. D.O. Summers Cleaners (1998), 81 Ohio St.3d 677, 680,693 N.E.2d 217; Jeffers v. Olexo (1989), 43 Ohio St.3d 140, 142,539 N.E.2d 614; Menifee v. Ohio Welding Products, Inc. (1984), 15 Ohio St.3d 75,472 N.E.2d 707. If a defendant points to evidence illustrating that the plaintiff will be unable to prove any one of the foregoing elements and if the plaintiff fails to respond as Civ. R. 56 provides, the defendant is entitled to judgment as a matter of law. See Feichtner v.Cleveland (1994), 95 Ohio App.3d 388, 394, 642 N.E.2d 657; Keister v.Park Centre Lanes (1981), 3 Ohio App.3d 19, 443 N.E.2d 532.
 {¶ 12} In order for a plaintiff to establish the duty element in a negligence action arising from a fallen tree, the evidence must establish that the landowner had actual or constructive notice of a patent danger that the tree would fall. See Heckert v. Patrick (1984),15 Ohio St.3d 402, 405, 473 N.E.2d 1204; Bertram v. Ohio Dept. ofTransp., Court of Claims No. 2002-7924-AD, 2003-Ohio-2608. If the landowner does not have actual or constructive notice of a tree's defective condition, the landowner will not be liable.Heckert, 15 Ohio St.3d at 405; Stevens v. Jeffrey Allen Corp. (1997),131 Ohio App.3d 298, 302-303, 722 N.E.2d 533. The Heckert court explained a landowner's liability for a fallen tree as follows:
 "Generally, one may use his land as he sees fit, providing that his use does not invade the rights of others. In assessing the liability of a landowner for injuries to others, the law in this country, including Ohio, has in some respects viewed the passive use of one's land differently than an active use. A passive use includes the use and enjoyment of the natural growth on the land.
 Accordingly, the Restatement of the Law of Torts sets forth the general rule that `[n]either a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.' 2 Restatement of the Law 2d, Torts (1965) 258, Section 363(1). This is contrasted with the principle applied to structures or objects placed upon the property by owners which occasion an injury to others outside the land. Section 364 of the Restatement of Torts 2d, supra, at 259, states that a possessor of land is subject to liability to others outside the land for physical harm caused by a structure or artificial construction on the land which the possessor realizes or should realize will involve an unreasonable risk of harm. A typical example of such artificial structure is a sign which overhangs a street or sidewalk that falls, thereby causing injuries to passing pedestrians.
 See Annotation (1957), 55 A.L.R.2d 178, 190; 39 American Jurisprudence 2d (1968), Highways, Streets and Bridges, Section 453, and cases cited therein.
 There is an exception to the general rule, however, concerning the duty of a property owner relating to the natural condition of and growth upon his land. This exception relates to growing trees with limbs overhanging a public street or highway. The law encompassing this exception varies rather markedly throughout the United States. However, it is generally stated that an owner of land abutting a highway may be held liable on negligence principles under certain circumstances for injuries or damages resulting from a tree or limb falling onto the highway from such property. Hensley v. Montgomery Cty. (1975), 25 Md.App. 361, 334 A.2d 542; Carver v. Salt River Valley Water Users' Assn. (1969), 104 Ariz. 513, 456 P.2d 371; Albin v. Natl. Bank of Commerce (1962), 60 Wash.2d 745, 375 P.2d 487; Lemon v. Edwards (Ky. 1961), 344 S.W.2d 822; and Hay v. Norwalk Lodge No. 730, B.P.O.E. (1951), 92 Ohio App. 14, 109 N.E.2d 481 [49 O.O. 189].
 Section 363(2) of the Restatement of Torts 2d, supra, at 258, specifically provides that a possessor of land in an urban area is subject to liability to persons using a public highway for physical harm arising from the condition of trees near the highway. The use of the term `urban' in this section of the Restatement introduces yet a further variation in the application of the rules concerning a property owner's duty or responsibility. In addition, a caveat following Section 363(2) states that the drafters express no opinion as to whether the rule would apply to a possessor of land in a rural area. Accordingly, there appears to have developed a distinction throughout the United States that there is a lesser standard of care with reference to rural, farm, timber, or little used land as opposed to strictly urban property.
 In the main, the cases applying the distinction often state that the urban owner has a duty of reasonable care relative to the tree, including inspection to make sure that it is safe. The duty placed upon the urban landowner, who has only a few trees, is not a heavy burden. This is in contrast to the rural landowner who may have trees of forest dimensions which would impose a duty of immense proportions, and constitute an onerous burden. Hensley, supra, 334 A.2d at 545.
 The leading case in Ohio discussing the urban-rural distinction is Hay, supra. In that case, the Court of Appeals for Huron County held as follows:
 `Although there is no duty imposed upon the owner of property abutting a rural highway to inspect growing trees adjacent thereto or to ascertain defects which may result in injury to a traveler on the highway, an owner having knowledge, actual or constructive, of a patently defective condition of a tree which may result in injury to a traveler must exercise reasonable care to prevent harm to a person lawfully using the highway from the falling of such tree or its branches.' Id. at paragraph three of the syllabus.
 It should be noted that where negligence revolves around the question of the existence of a hazard or defect, the legal principle prevails that notice, either actual or constructive, of such hazard or defect is a prerequisite to the duty of reasonable care. See 54 Ohio Jurisprudence 3d (1984) 540, Highways and Streets, Section 416, and cases cited therein. Furthermore, constructive notice may be imputed to the one sought to be held responsible if the hazard or defect complained of is deemed patent."[1]
Id. at 403-405 (footnotes omitted).
 {¶ 13} In the case at bar, the record contains no evidence to establish that appellee had either actual or constructive notice of a defective condition of the tree. While appellant advanced her belief that the tree was dead or dying, her allegation is conclusory and she has presented no evidence to support her claim. See Evans v. JayInstrument Specialty Co. (S.D.Ohio 1995), 889 F.Supp. 302, 310 ("bald self-serving and conclusory allegations are insufficient to withstand a motion for summary judgment"), cited in Means v. Cuyahoga Cty. Dept. ofJustice Affairs, Cuyahoga App. No. 87303, 2006-Ohio-4123; see, also,McCartney v. Oblates of St. Francis deSales (1992) 80 Ohio App.3d 345,609 N.E.2d 216 (stating that a trial court ruling on a summary judgment motion is not required to accept conclusory allegations that are devoid of any evidence to create an issue of material fact). Further, simply because appellant believed that the tree was dead or dying does not establish that appellee knew or should have known that the tree was dead or dying. See Nationwide Ins. Co. v. Jordan (1994), 64 Ohio Misc.2d 30,32, 639 N.E.2d 536 (refusing to find the landowner had constructive notice of the tree's condition when the only person who testified that the tree was rotten and likely to fall was the plaintiff, and stating "[h]ad the plaintiff conveyed this knowledge to her neighboring landowner, the danger might well have been obviated, or, alternatively, the plaintiff's hands would be clean and the defendant would have been on notice and resultantly liable for the fall"). Moreover, as the trial court noted the photographs appellant presented appear to indicate that the tree was healthy before its fall. These photos raise no dispute as to the tree's condition, but instead show that the tree was alive, not rotten, when it fell[2]. Appellant's complaint that the trial court improperly weighed the evidence by viewing the photographs and drawing conclusions from them is without merit. As we stated supra, the resolution of a question of law, here appellee's duty, may require a court to review and consider the evidence. This is a different matter than viewing conflicting evidence and assigning credibility to one side.
 {¶ 14} Appellant further asserts that the trial court improperly determined that the tree's fall was an "act of God" that relieved appellee of liability.
 {¶ 15} It is well-settled that if an "Act of God" is so unusual and overwhelming as to do damage by its own power, without reference to and independently of any negligence by defendant, there is no liability. SeePiqua v. Morris (1918), 98 Ohio St. 42, 49, 120 N.E. 300. An act of God is:
 "Any irresistible disaster, the result of natural causes, such as earthquakes, violent storms, lightening and unprecedented floods. It is such a disaster arising from such causes, and which could not have been reasonably anticipated, guarded against or resisted. It must be due directly and exclusively to such a natural cause without human intervention. * * * If the injury is in part occasioned by the wrongful act or the negligent act of any persons concurring therein and contributing thereto, such person will be liable therefor and this applies to a municipal corporation as well as to a natural person."
Id. at 47-48. If proper care and diligence on the part of defendant would have avoided the act, the act is not excusable as an "Act of God." See Bier v. New Philadelphia (1984), 11 Ohio St.3d 134, 464 N.E.2d 147;Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158, 164,703 N.E.2d 841. For an event to be an act of God, it must not be foreseeable by the exercise of reasonable foresight and prudence. SeeAnthony Carlin Co. v. Hines (1923), 107 Ohio St. 328, 140 N.E. 99.
 {¶ 16} In the case sub judice, we need not decide whether an "act of God" relieves appellee of liability. Instead, as we determined above, appellee is not liable because she lacked actual or constructive knowledge of a patent dangerous condition of the tree. Thus, our analysis ends here and we need not answer the question of whether appellee is relieved of liability under the "act of God" defense.
 {¶ 17} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sole assignment of error and affirm the trial court's judgment.
[1] While Heckert discussed the landowner's liability for trees that abut a highway, we see no reason why the same rationale should not apply between adjoining landowners when a fallen tree damages property.
[2] High winds, a shallow or sparse root system and saturated soil can apparently result in a tree uprooting. Thus, a dead or rotten tree is not the only explanation for such an event.
JUDGMENT AFFIRMED.
Kline, J. McFarland, J.: Concur in Judgment Opinion