DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment of the Ottawa County Court of Common Pleas. *Page 2 
 {¶ 2} On July 25, 2004, appellant, Marilea Hanthorn, her husband James Hanthorn, and their children attended the Ottawa County Fair. At approximately 11:45 a.m., Marilea and her family were under a tree watching the draft horse judging. Because her son could not see over the fence surrounding the horse arena, he was standing on a picnic table. Marilea stood behind the picnic table with her hands on his hips. James and the couple's daughter were also standing behind the table. Suddenly, Marilea heard a loud cracking sound emanating from the tree. James looked up and saw "something coming," and yelled "Run!" Marilea grabbed her son, ran forward, struck a sign on the horse arena fence, and fell to the ground. A large tree branch, which was approximately 20 feet long and 12 inches in diameter, landed right behind the picnic bench. Marilea was taken by EMS to the hospital because she was experiencing pain in her back, neck and knees.
 {¶ 3} On July 14, 2006, appellant and her husband filed a complaint in the trial court seeking damages from appellee, the Ottawa County Agricultural Society ("Society"), and the Ottawa County Board of Commissioners, for their alleged negligence in failing to keep the fairgrounds, specifically, the trees, in a reasonably safe condition. They contended that this negligence was the proximate cause of Marilea's injuries. James set forth a derivative claim for loss of consortium.
 {¶ 4} After answering and engaging in discovery, appellee and the Ottawa County Board of Commissioners filed separate motions for summary judgment. The trial *Page 3 
court granted each of those motions. Appellant Marilea Hanthorn appealed both judgments and set forth the following assignment of error:
 {¶ 5} "The trial court erred by granting defendants/appellees' motions for summary judgment."
 {¶ 6} We note at the outset that after appellate briefs were filed in this case, appellant dismissed her appeal against the Ottawa County Board of Commissioners. See Marilea Hanthorn v. Ottawa CountyAgricultural Society, et al, (Nov. 4, 2008), OT-08-032. Therefore, we shall only address appellant's assignment of error as it relates to Society. Furthermore, even though appellant addresses the question of whether the Society is immune from this suit under R.C. Chapter 2744, we need not reach that issue. Rather, this appeal can be determined under the law of negligence.
 {¶ 7} Because an appellate court reviews the grant of a summary judgment de novo, the standard applicable to both of appellant's assignments of error is found in Civ. R. 56(C). Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. The grant of a motion for summary judgment is proper when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 8} To prevail in a negligence action, a plaintiff must show that: (1) the defendant owes a duty to the plaintiff; (2) there was a breach of that duty; and (3) there *Page 4 
was an injury proximately resulting from the breach. Robinson v.Bates, 112 Ohio St.3d 17, 2006-Ohio-6362, ¶ 21, citing Menifee v. OhioWelding Prods. Inc. (1984) 15 Ohio St.3d 75, 77. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 369-370,1998-Ohio-389. Once the moving party satisfies its burden, the nonmoving party has a reciprocal burden to set forth specific facts demonstrating, by affidavit or as otherwise provided in Civ. R. 56(E), that there is a genuine issue for trial. Mootispaw v. Eckstein, 76 Ohio St.3d 383, 385,1996-Ohio-389.
 {¶ 9} In the present case, Marilea and her family were the appellee's business invitees, that is, they paid a fee to enter the fairgrounds thereby conferring a benefit upon Society. See Provencher v. Ohio Dept.of Transp. (1990), 49 Ohio St.3d 265, 266. Therefore, appellee had a duty to exercise reasonable care to protect Marilea from an unreasonable risk of physical harm and to warn her of any latent or hidden dangers.Armstrong v. Best Buy Co. Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, ¶ 5. This included the duty to warn her "of dangerous conditions known to, or reasonably ascertainable by," appellee which Marilea could not be expected to discover or protect herself against. Jackson v. KingsIsland (1979), 58 Ohio St.2d 357, 359. Nonetheless, appellant could defeat appellee's motion for summary judgment only if she created a genuine issue of material fact on the question of whether appellee had superior knowledge; i.e., *Page 5 
constructive notice, of the particular danger that caused Marilea's injury. LaCourse v. Fleitz (1986), 28 Ohio St.3d 209, 210; Wertz v.Cooper, 4th Dist. No. 06CA3077, 2006-Ohio-6844, ¶ 12.
 {¶ 10} Here, undisputed deposition testimony reveals that the members of the Society's various committees would annually (just prior to the fair) do a "walk through" of the fairgrounds inspecting the property for any problems. This included a viewing of the trees on the property. If they saw something that looked like rot or decay in a tree or its branches, they would contact Traver Tree Service, which would inspect the tree, and, if necessary, remove that tree or the defective portions of the tree. Dirl Barron, who served on the Society's board at the time of the incident, averred that Traver Tree Service also inspected the trees annually and that he had seen Bruce Traver "with his little picks and stuff in the trees checking the trees and stuff." According to Barron, any decision concerning a particular tree was made by the tree service.
 {¶ 11} Furthermore, individuals who saw the branch after it broke off the tree saw no defect in the branch. It was variously described as a "green mass," "in good condition" with "no signs of rot or decay", "perfectly green and full of leaves and everything," "perfectly healthy looking branch," "split in two pieces" and "green." The tree itself was also depicted as "perfectly healthy" and "green." According to Norris Schimming, another member of the Society's board, the branch that broke was not dead *Page 6 
and looked "pretty healthy." The tree, along with a second tree, was removed in 2005 to, primarily, make room for temporary shelter for horses.
 {¶ 12} Thus, in considering the evidence offered by appellee, there is nothing tending to show that appellee had superior/constructive knowledge of the fact, as gleaned from walk throughs and/or through Traver Tree Service, that the branch of this tree was going to break on July 25, 2004. Appellant asserts, however, that the report of her expert, T. Davis Sydnor, Ph. D., creates a genuine issue of material fact as to appellee's superior/constructive knowledge of this particular danger. In his report, Dr. Sydnor stated:
 {¶ 13} "Trees at the Ottawa County Fairgrounds both pictured in photographs, described in deposition, and as seen by a drive by [on March 23, 2008] are mature to overmature and loosing [sic] branches in a completely predictable pattern. * * * There is a great deal of structural instability present but more likely to have been found in the open grown trees that were removed. * * * Businesses are expected to provide a safe environment for leisure activities. In my judgment, managers of the fairground failed this duty. In my judgment and to a reasonable horticultural and arboricultural certainty, property managers at the Ottawa County Fairgrounds could and should have known of the structural instability present in the trees on the fairgrounds."
 {¶ 14} The major problem with Dr. Sydnor's opinion is that he never saw the tree in question or the branch that fell. His opinion is based upon a "drive by" of the *Page 7 
fairgrounds almost four years after the fact and photographs that were taken at some unknown point in time, but not necessarily on July 25, 2004. Dr. Sydnor also makes the assumption that there were never any regular inspections of the trees on the fairground by not only the Society's members but also by a tree service, which had the final say as to whether a particular tree needed to be removed or trimmed. In short, appellant's expert provided a highly speculative opinion which fails to create a genuine issue of material fact on the issue of whether appellee had superior knowledge/constructive notice of a defect in the tree involved in the present case. Accordingly, appellant's sole assignment of error is found not well-taken.
 {¶ 15} The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.
JUDGMENT AFFIRMED. *Page 8 
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., William J. Skow, P.J., Thomas J. Osowik, J., CONCUR. *Page 1