OPINION
{¶ 1} Plaintiff-appellant, Robert G. Slowey, appeals a decision from the Fayette County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Midland Acres, Inc. and D.E. Mossbarger. For the reasons discussed below, we affirm.
 {¶ 2} Appellant is the owner of a mare[1] named Sissel. D.E. Mossbarger is the *Page 2 
president of Midland Acres, Inc., a horse-breeding farm in Fayette County. Appellant sought to breed Sissel with a stallion[2] named Master Lavec located at Midland Acres. On February 21, 2002, the parties executed a contract for the "2002 Breeding Season."
 {¶ 3} It is common knowledge in the horse industry that the majority of mares have their first ovulation 8 to 16 days after they deliver a foal.[3] Therefore, it is common for the owner of a mare who wishes to breed the mare with a specific stallion to deliver the mare to the farm where the stallion is located prior to the birth of an in-utero foal.
 {¶ 4} In order to successfully breed Sissel to Master Lavec, Sissel was transported to and boarded at Midland Acres. At the time, Sissel was in foal[4] and due to give birth shortly thereafter. On March 14, 2002, while at Midland Acres, Sissel gave birth to her foal, Jim, a few days before she was bred to Master Lavec. Consistent with common practice, Jim remained at Midland Acres with Sissel to allow Sissel to provide necessary nourishment and care until the foal has been successfully weaned and able to travel safely. Generally, the age for weaning is between four to six months. On June 9, 2002, Jim died as the result of an accidental strangulation in a gate at Midland Acres.[5]
 {¶ 5} On May 21, 2004, appellant filed a complaint against appellees, alleging negligence, bailment and breach of a written contract. On February 24, 2005, appellant voluntarily dismissed the case without prejudice. On February 24, 2006, appellant filed the complaint in the instant case alleging negligence, bailment and breach of an oral contract. Appellees moved to dismiss arguing the case was prohibited by the statute of limitations. In response, appellant argued the instant case was a refiled complaint and the savings statute *Page 3 
applied to give the court jurisdiction. Appellant then moved for leave to amend the complaint, seeking to add language to the complaint to satisfy the statute of limitations and savings statute. The trial court granted appellant's motion to amend and overruled appellee's motion to dismiss. Appellees then moved for summary judgment, arguing an exculpatory clause in the written contract between the parties precluded appellant's claims. In the motion, appellees also sought reconsideration of the motion to dismiss. The trial court granted summary judgment in favor of appellees.[6] Appellant timely appeals, raising a single assignment of error:
 {¶ 6} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO THE APPELLEES."
 {¶ 7} In his sole assignment of error, appellant argues the trial court erred by granting summary judgment to appellees. Appellant first argues the contract signed by the parties only applies to the breeding of Sissel to Master Lavec and a separate oral contract was entered into between the parties regarding the care of Jim to which the exculpatory clause did not apply. Secondly, appellant argues that the exculpatory clause in a written contract does not apply to an unknown risk towards the care of a horse that is not the subject matter of the written contract.
 Standard of Review {¶ 8} This court's review of a trial court's ruling on a motion for summary judgment is de novo. Broadnax v. Greene Credit Service (1997),118 Ohio App.3d 881, 887. Summary judgment is appropriate when there are no genuine issues of material fact to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to *Page 4 
only one conclusion, and that conclusion is adverse to the nonmoving party. Civ. R. 56; Smith v. Five Rivers MetroParks (1999),134 Ohio App.3d 754, 760. The burden of demonstrating that there is no genuine issue of material fact is on the moving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. All evidence submitted in connection with a motion for summary judgment must be construed most strongly in favor of the party against whom the motion is made.Morris v. First National Bank Trust Co. (1970), 21 Ohio St.2d 25. To prevail on a motion for summary judgment, the moving party must be able to point to evidentiary materials that show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107. The nonmoving party must then present evidence that some issue of material fact remains for the trial court to resolve. Id.
 Analysis {¶ 9} At issue in this case is the purported oral agreement between the parties concerning the foal, Jim, and the effect of the exculpatory clause contained in the written contract. The exculpatory clause at issue provides:
 {¶ 10} "Neither Midland Acres nor its members, agents, employees, [sic] shall be liable for any injury or death suffered by any horse, from any cause whatsoever, while in the custody of Midland Acres and the undersigned owner specifically assents to such conditions, waives all and every claim for damage resulting from such injury or disability or death."
 {¶ 11} Appellant urges that two separate and distinct contracts were entered into between the parties: first, an oral contract involving the birth and care of Jim agreed upon before execution of the written contract; second, the written contract for the breeding of Sissel to Master Lavec which resulted in the birth of the foal, Tich. Appellant claims the contracts are easily distinguished because they involve separate subject matter and consideration. Specifically, appellant argues that the oral contract was for foaling and care in exchange for *Page 5 
birthing and boarding fees, while the written contract was for breeding in exchange for the breeding fees. As a result, appellant argues that since the oral contract was a separate and distinct contract, the exculpatory clause in the written contract is inapplicable to Jim and does not preclude this cause of action.
 {¶ 12} The necessary elements of a valid contract are "an offer, acceptance, contractual capacity, consideration (bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." Kostelnik v. Helper, 96 Ohio St.3d 1,2002-Ohio-2985, ¶ 16. It is essential that there is a "meeting of the minds" as to the essential terms of the agreement. Id. Contracts are to be interpreted to achieve the intent of the parties. Skivolocki v. EastOhio Gas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." Kelly v. Med. Life Ins.Co. (1987), 31 Ohio St.3d 130, 132.
 {¶ 13} An exculpatory clause releasing one party from damages is ordinarily an absolute bar to a later action or a claim encompassed within the release. Haller v. Borror Corp. (1990), 50 Ohio St.3d 10, 13. The language of the exculpatory clause must be clear, unequivocal, unambiguous and unqualified. Valid exculpatory claims or releases constitute express assumptions of risk. Anderson v. Ceccardi (1983),6 Ohio St.3d 110, 114.
 {¶ 14} The trial court held, "[t]his court finds this exculpatory clause to be clear, unambiguous and unqualified. It specifies the liability and the entities being released. The Court finds that the term `horse' used in the exculpatory clause refers to both adult and juvenile animals. The contract includes the terms `mare' `stallion and `foal' outside of the exculpatory clause, which references only the term `horse.' * * * The foal falls within the contractual limitations established by the exculpatory clause. While the oral contract for foaling and care of the colt (Jim) may have been different terms and consideration than the *Page 6 
written breeding contract, the Court finds the written exculpatory clause to have merged with the oral terms."
 {¶ 15} The parties in this case signed the written agreement on February 21, 2002, before Sissel was transported to Midland Acres. The contract in this case clearly noted that before being bred with Master Lavec, Sissel would deliver a foal.[7] Appellant asserts that a separate oral agreement was made between the parties for the birth and subsequent care of the foal. Like the trial court, we agree that this oral agreement existed because the written contract does not address any fees or services for Jim.
 {¶ 16} However, the foal, Jim, falls within the contractual limitations of the exculpatory clause. The parties' written agreement clearly contemplates that Midland Acres was receiving Sissel while in foal. Following the birth, Jim would stay with Sissel until he was weaned. As the trial court found, the contract includes the terms "mare," "stallion," and "foal" outside of the exculpatory clause. Yet the exculpatory clause states that Midland shall not be liable for any injury or death suffered by "any horse."
 {¶ 17} Moreover, the exculpatory clause was part of the consideration for Midland Acres to accept Sissel while in foal. More simply stated, part of the consideration for the written contract was that Midland Acres agreed to accept the pregnant horse in exchange for appellant's release of Midland Acres from liability for "injury or death suffered by any horse," including Sissel or the newborn foal.
 {¶ 18} Appellant's sole assignment of error is overruled.
 {¶ 19} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] "Mare" refers to a fully mature female horse, often of breeding age.
[2] "Stallion" refers to a male horse kept for breeding or an uncastrated male horse.
[3] "Foal" refers to a young horse.
[4] "In foal" is a common term used in horse breeding that means the mare is pregnant.
[5] Sissel was successfully bred with Master Lavec, resulting in the delivery of a live foal named Tich.
[6] In the motion for summary judgment, the trial court did not address appellees' arguments for reconsideration of the motion to dismiss and granted summary judgment on the basis of the exculpatory clause contained in the contract. On appeal, appellees set forth additional arguments regarding the trial court's denial of the motion to dismiss. Appellees, however, did not file a cross-appeal nor submit cross-assignments of error. Accordingly, we will not address these arguments.
[7] Specifically, the contract inquires "Is this mare in foal for 2002?," with "Yes" filled in the blank next to the question.