[Cite as *Kircher v. Baugess*, 2013-Ohio-4569.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


JEANINE KIRCHER, on Behalf of          :
Michael Kircher, a Minor,
                                       :     CASE NO.   CA2013-03-006
        Plaintiff-Appellant,
                                       :     O P I N I O N
                                             10/15/2013
    - vs -                             :

                                       :

JAMES BAUGESS, et al.,                 :

        Defendants-Appellees.          :

                                       :


CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVC 20110169


Hausmann-McNally, S.C., Matthew T. Wolf, J. Scott Bowman, 300 South Second Street, 2nd Floor, Columbus, Ohio 43215, for plaintiff-appellant

Caborn & Butauski Co., LPA, David A. Caborn, 765 South High Street, Columbus, Ohio 43206, for defendant-appellee, James Baugess

John C. Albert, 500 South Front Street, Suite 1200, Columbus, Ohio 43215, for defendant, Tolles Technical & Career Center


**PIPER, J.**

{¶ 1}   Plaintiff-appellant, Jeanine Kircher, on behalf of her minor son, Michael Kircher, appeals a decision of the Madison County Court of Common Pleas, granting summary judgment in favor of defendant-appellant, James Baugess.

{¶ 2} Michael Kircher and Brittnie Blackmon were classmates at the Tolles Technical & Career Center, where they attended a pre-veterinary technology class. Blackmon, the stepdaughter of Baugess, brought two of her family's dogs into class to act as animal patients. Students in the class interacted with the dogs, giving them a general health exam, restraining them, and bathing them. The students were grouped together into sets of three students per animal. Kircher was grouped with Blackmon as well as another student, Jordan Frybarger, to work with Blackmon's dog, Ace, the dog which would be their subject in the exercise.

{¶ 3} Blackmon left Kircher and Frybarger with Ace and walked over to get a clipboard and to check on the other dog she had brought into class that day. Frybarger "hugged" Ace around the midsection while Kircher petted Ace's head. Although Ace had never acted aggressively or attacked anyone before, Ace bit Kircher on the face above his lip. Kircher's injuries required medical attention and left a permanent scar.

{¶ 4} Kircher's parents filed suit against Baugess, claiming statutory and common law negligence. The parties engaged in discovery and then each moved for summary judgment. The trial court granted Baugess' motion for summary judgment in regard to both the statutory and common law negligence claims, denying Kircher's motion for summary judgment in the process. Kircher now appeals the trial court's decision as to the statutory negligence claim only, raising the following assignment of error.

{¶ 5} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT AND DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT.

{¶ 6} Kircher argues in his assignment of error that the trial court erred in granting summary judgment to Baugess and in denying his own motion.

{¶ 7} This court's review of a trial court's ruling on a summary judgment motion is de

novo. *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio 4124, ¶ 16. Civ.R. 56 sets forth the summary judgment standard and requires that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 8} The nonmoving party "may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein,* 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Enterprises*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352,*2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

{¶ 9} In pertinent part, R.C. 955.28(B) provides that "the owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog * * *." Therefore, "in an action for damages under R.C. 955.28(B), a plaintiff must prove (1) ownership, keepership, or harborship of the dog, (2) the actions of the dog were the proximate cause of damage, and (3) the monetary amount of damages." *Diaz v. Henderson*, 12th Dist. Butler No. CA2011-09-182, 2012-Ohio-1898, ¶ 11.

{¶ 10} "A keeper, in the context of R.C. 955.28(B) is one having physical charge or care of the dog." *Hicks v. Allen*, 11th Dist. Ashtabula No. 2005-A-0002, 2007-Ohio-693, ¶ 23. A person can be considered a "keeper" even when the physical charge or care of the dog is only temporary. *Lewis v. Chovan*, 10th Dist. Franklin No. 05AP-1159, 2006-Ohio-3100, ¶ 12.

"The focus should be on the status of the person bitten by the dog rather than the time frame in which the physical control was exercised." *Marin v. Frick*, 11th Dist. Geauga App. No. 2003-G-2531, 2004-Ohio-5642, ¶ 45.

{¶ 11} "A 'keeper' is not within the class of people that the legislature intended to protect by enacting the strict liability provision contained in R.C. 922.28(B)." *Khamis v. Everson*, 88 Ohio App.3d 220, 227 (2d Dist.1993). Therefore, injured "keepers" cannot avail themselves of the strict liability protections within the statute, and instead, may proceed under common-law negligence principles. *Id.*; *see also Johnson v. Allonas*, 116 Ohio App.3d 447 (3d Dist.1996).

{¶ 12} Kircher argues the trial court erroneously granted summary judgment because he was not a "keeper" at the time Ace bit him, or at the least, genuine issues remain regarding whether he was a "keeper." However, the record indicates that Kircher was a "keeper" at the time Ace bit him so that summary judgment is appropriate.

{¶ 13} According to Kircher's deposition, the students in the class would take the dog and place it on an adjustable table and then secure it with a noose around its neck. Kircher testified that "someone always had to keep an eye on the dog, keep a hand on the dog and make sure the dog doesn't jump off the table." Kircher also explained that once secured, the students would "do the general parameters" and then bathe and dry the dog.[1] Kircher testified that it was the students' duty to keep the dog calm and to follow all prescribed safety measures.

{¶ 14} On the day of the incident, Kircher approached Ace, who was already on the examination table and secured in the noose. Kircher began to pet Ace on the head to calm him down because he believed that Ace appeared to be "a little nervous." Kircher testified

---

1. Establishing the dog's parameters included recording the animal's respiration rate, heart rate, capillary refill time, hydration status, as well as temperature.

that Frybarger was positioned near Ace's midsection area petting and hugging the dog when Ace suddenly lunged and bit his face. Kircher also testified that he was unsure as to where Blackmon was located at the time he was bitten, but thinks that she may have been petting Ace on the neck.

{¶ 15} Blackmon testified that she and Frybarger placed Ace on the table, and that Kircher joined their group to work with Ace after he put on gloves and a protective gown. Blackmon stated that the group had forgotten to retrieve a clipboard that they needed, causing her to leave the group and get it from across the room. Before she left Kircher and Frybarger, she "asked them if they both had" Ace and whether they were "restraining him." According to Blackmon's testimony, Kircher and Frybarger confirmed that they had Ace under control before she walked to the other side of the room. Blackmon then went to retrieve the clipboard and stopped momentarily at another table to check on the other dog she had brought to class that day. Blackmon testified that as she was checking on the other dog, approximately 35-40 feet away from Ace, she saw that Kircher had been bitten.

{¶ 16} While Kircher and Blackmon's testimony is contradictory as to where Blackmon was located in the room at the time of the dog bite, the fact is inconsequential because Kircher was a "keeper" of Ace as contemplated by the statute. Both Kircher and Blackmon testified that Kircher was standing near Ace's head and attempted to control the dog so that they could perform the exam. In Kircher's own testimony, he stated that he thought Ace was acting nervous and that he felt compelled to calm the dog by petting his head. Therefore, Kircher's actions in the moments preceding the incident indicate that he was exercising physical care and charge over the dog.

{¶ 17} Kircher claims that he was not a "keeper" as contemplated by the statute because Blackmon was in the room at the time of the incident, and as the owner, she was primarily in charge of Ace. However, the statute does not limit the application of strict liability

to owners alone. Instead, the statute specifically recognizes that "keepers" are subject to liability, and therefore, are unprotected by the statute. While there is no dispute that Blackmon was in the room and could even have been at Ace's side, that fact does not change Kircher's designation as a "keeper" of Ace.[2]

{¶ 18} Ohio courts have recognized that one may be considered a "keeper" even though the owner is nearby and the "keeper's" time of control is temporary. For example, the Eleventh District found that a man who held a dog's leash only long enough for the owner to step inside the house to answer the phone and to use the restroom was a "keeper." *Frick*, 2004-Ohio-5642. The court concluded that "it is apparent that appellant was charged with the responsibility and care" of the dog during the time that he held the leash. *Id.* at ¶ 49. The court further concluded that neither the appellant's "limited interaction" with the dog prior to being injured by the dog nor the fact that appellant was in charge of the dog for only "a few minutes, in no way diminished his position in control of [the dog] or his duty to control [the dog] at the time" of the injury. *Id. See also Allonas*, 116 Ohio App.3d at 448 (designating appellant a "keeper" when she voluntarily took a dog outside on a leash, thereby exerting "physical charge or care of the dog at the time of the accident"); *Chovan*, 2006-Ohio-3100 (designating appellant a "keeper" where appellant was a pet groomer who was assisting the establishment's owner in giving the dog a bath); and *Khamis*, 88 Ohio App.3d 220 (designating appellant a "keeper" because the appellant was a volunteer and had control over the dog at the time of the injury when appellant was cleaning the dog's cage).

{¶ 19} Kircher argues that this court should hold that if an owner is in the room where the incident occurred, the other people in the room cannot be "keepers." In support of this argument, Kircher cites *Bevin v. Griffiths*, 44 Ohio App. 94 (9th Dist.1932), wherein the dog

2. Kircher advances the argument that the exercise had not started, suggesting his responsibility or his duty to exercise his authority over Ace did not exist. However, there are no material facts creating a genuine issue that Kircher was acting other than as a "keeper" of Ace immediately before he was bitten.

owner's employee was injured when the dog ran into the employee's knee. However, we do not find *Griffiths* controlling in the case sub judice.

{¶ 20} The court in *Griffiths* discussed several issues, including whether the version of the statute in effect in 1932 applied to dogs that had never before showed signs of viciousness or mischievousness, and whether an owner could be liable to its employee for the actions of its dog. However, the court never discussed whether the injured employee was a "keeper" because the statute in effect at the time made no mention of "keepers."[3] Instead, the court concluded only that the statute applied to dogs even if the dog had not shown a history of aggressive behavior, and that employers/owners could be held liable if their dog injured an employee. While the court disregarded the defendant/employer's argument that the plaintiff/employee was a harborer because she fed and cared for the dog, and therefore, could not recover damages "for an act for which they may be jointly liable," *Griffiths* does not stand for the proposition that one cannot be a "keeper" if the owner is in the same room. *Griffiths*, 44 Ohio App. at 98.

{¶ 21} As previously discussed, whether Blackmon was in the room or standing right next to Ace, the record indicates that Kircher was exerting control and care over Ace at the moment he was bitten, and was therefore a "keeper" as contemplated by the statute. As such, Kircher cannot establish liability based upon the statute, and summary judgment was appropriate in this case. Kircher's assignment of error is therefore overruled.

{¶ 22} Judgment affirmed.

HENDRICKSON, P.J., and S. POWELL, J., concur.

---

3. Section 5838 of the General Code, which was the controlling statute at the time, provided that "a dog that chases, worries, injures or kills a sheep, lamb, goat, kid, domestic fowl, domestic animal or person, can be killed at any time or place; and, if in attempting to kill such dog running at large a person wounds it, he shall not be liable to prosecution under the penal laws which punish cruelty to animals. The owner or harborer of such dog shall be liable to a person damaged for the injury done."