[Cite as *Rossi v. Kraft*, 2020-Ohio-1065.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| KEVIN ROSSI, | : | |
| Appellant, | : | CASE NO. CA2019-07-127 |
| | : | O P I N I O N |
| - vs - | | 3/23/2020 |
| | : | |
| JAMES KRAFT, et al., | : | |
| Appellees. | : | |


CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2017-08-1770


Michael Todd McIntosh, 1136 Saint Gregory Street, Suite 100, Cincinnati, Ohio 45202, for appellant

Craig T. Matthews, 320 Regency Ridge Drive, Centerville, Ohio 45459, for appellee, James Kraft


**S. POWELL, J.**

{¶ 1}   Kevin Rossi appeals from the decision of the Butler County Court of Common Pleas, which granted summary judgment in favor of James Kraft and WMVH, LLC.  For the reasons that follow, this court reverses the grant of summary judgment.

{¶ 2}   In 2014, James Kraft ("James"), his brother, David Kraft ("David"), and Kevin Rossi ("Kevin") entered into a business venture to lease and operate Weatherwax golf

course in Middletown, Ohio. They verbally agreed to form WMVH, LLC ("WMVH") to pursue this business venture. James and David both made capital contributions of $50,000 to WMVH and both received 40 percent membership interests. Kevin contributed $25,000 to WMVH in exchange for a 20 percent membership interest.

{¶ 3} WMVH subsequently applied for a liquor permit. However, the parties learned that the application would be rejected by the Ohio Department of Commerce on the basis of the "Tied House Law," which prohibits employees of wholesale distributors of intoxicating beverages from having a financial interest in a business where beer or liquor is sold on the premises.[1] At the time of the application, both David and Kevin were employees of Ohio Eagle Distribution, a wholesale distributor.

{¶ 4} Kevin and David intended to remain employed with Ohio Eagle Distribution. So to ensure that WMVH could obtain the liquor license, Kevin and David withdrew as members. James remained as the sole member of WMVH. Kevin also agreed to convert his initial capital contribution to a loan repayable by James and the parties executed a written repayment agreement whereby James agreed to repay the loan to Kevin in full by November 2015. In February 2015, James repaid the loan in full.

{¶ 5} Kevin executed a document in February 2015, which confirmed that he held no membership interest in "WMVH, LLC dba Weatherwax Golf Course." Kevin further executed a document verifying that the capital contribution loan had been repaid to him in full.

{¶ 6} James managed the day-to-day operations of Weatherwax. David and Kevin performed some work for Weatherwax. In 2015, James paid Kevin $24,600 in cash. In November 2016, Weatherwax ceased all business operations. In December 2016, James

---

1. R.C. 4301.24(C)(1).

paid Kevin an additional $10,000.

{¶ 7} Kevin filed a complaint against James alleging breach of contract, fraud, theft, equity, and punitive damages. With respect to the breach of contract claim, Kevin pled that he had entered into an agreement entitling him to 20 percent of the profits of operating Weatherwax and that while he had received a distribution of profits, he had not received his full share.

{¶ 8} James and WMVH moved for summary judgment. James and WMVH argued that Kevin's claims all relied on Kevin having an ownership interest in WMVH, which he had relinquished. The defendants submitted the withdrawal document as well as the repayment agreement. James claimed that the payments to Kevin were gifts and they had been accounted for as "non-contractual, interest" on Kevin's capital contribution loan.

{¶ 9} In opposition, Kevin filed his affidavit, in which he asserted that he had remained a "silent partner" of the business even after his withdrawal from WMVH. Kevin attached a handwritten document that he alleged was written by James and which set forth the ownership percentages and showed profit distributions. Kevin later supplemented the summary judgment record with David's deposition.

{¶ 10} The trial court granted summary judgment in favor of James and WMVH. The court held that the summary judgment evidence showed that Kevin withdrew from and relinquished any interest in WMVH. The court further found that there was no evidence of any other oral agreement between the parties. Kevin appeals and raises two assignments of error for our review, which this court will address together.

{¶ 11} Assignment of Error No. 1:

{¶ 12} THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS/APPELLEES AS THEY, AS MOVANT, FAILED TO MEET THEIR INITIAL BURDEN UNDER CIV.R. 56(C).

{¶ 13} Assignment of Error No. 2:

{¶ 14} THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT IN GRANTING SUMMARY JUDGMENT TO THE DEFENDANTS-APPELLEES AS THE PLAINTIFF-APPELLANT, BEING THE NON-MOVING PARTY, SUBMITTED AND POINTED TO EVIDENTIARY MATERIAL SHOWING THERE ARE GENUINE ISSUES FOR TRIAL.

{¶ 15} Kevin argues that the trial court erred in granting summary judgment because genuine issues of material fact remain as to whether the parties had an agreement to share the profits of operating Weatherwax despite Kevin's withdrawal from WMVH. An appellate court reviews a trial court's ruling on a summary judgment motion de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124, ¶ 16. In applying the de novo standard, the appellate court uses the same standard that the trial court should have used and examines the evidence to determine whether as a matter of law no genuine issues exist for trial. *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.).

{¶ 16} Civ.R. 56 sets forth the summary judgment standard and requires that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there are no genuine issues of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

{¶ 17} In response, the nonmoving party "may not rest on the mere allegations of his pleading, but * * * by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio

St.3d 383, 385 (1996). In determining whether a genuine issue of material fact exists, the evidence must be construed in the nonmoving party's favor. *Walters v. Middletown Properties Co.,* 12th Dist. Butler No. CA2001-10-249, 2002-Ohio-3730, ¶ 10.

{¶ 18} The trial court found that Kevin had failed to produce any evidence of a subsequent oral agreement obligating James and/or WMVH to pay Kevin a profit distribution after his withdrawal from WMVH. In his summary judgment affidavit, Kevin averred that it was agreed by him, James, and David that he would receive 20% of all profits of WMVH even after his withdrawal from WMVH. Kevin further averred that after he quit his employment at Ohio Eagle Distribution, he began receiving profit distributions through payroll checks as well as $24,600 in cash in 2015 and an additional $10,000 in 2016. Kevin averred that the payments were not gifts or interest payments. He further claimed that James had provided him with a handwritten breakdown of percentages and profit distributions, which document was affixed to the affidavit. That document consists of a single page including the following relevant handwritten text:

| Jim + David | | | |
|---|---|---|---|
| Loan | | 50,000.— | |
| 12-14-15 | Interest | 3,000.— | 40% |
| 12-20-16 | Interest | 20,000 — | |
| Cash | | 49,200.— | 40% |
| | | -------------- | |
| | | 122,200.— | |

| Kevin | | | |
|---|---|---|---|
| Loan | | 25,000 | |
| 12-14-15 | | 1,500.— | |
| 12-20-16 | | 10,000.— | 20% |
| Cash | | 24,600.— | |
| | | -------------- | |
| | | 61,100 | |

{¶ 19} At David's deposition, he testified that he was not a member of WMVH because of the liquor license issue. Nonetheless, he described a "gentlemen's agreement"

between him, his brother, and Kevin. James and David would both receive 40 percent shares and Kevin would receive 20 percent. David acknowledged getting paid for his ownership interest throughout the time that WMVH was operating from 2014 through 2016. He further acknowledged that James had never characterized the payments to him as gifts. David acknowledged receiving a $20,000 payment, which he described as "profit."

{¶ 20} David testified concerning the handwritten document referred to in Kevin's affidavit. David acknowledged having seen the document before at the last meeting between the partners. David acknowledged that his brother authored the document because he recognized his handwriting. David agreed that the document accurately reflected payments he received for $3,000 and $20,000.

{¶ 21} James provided the following response to a request for admission:

{¶ 22} **REQUEST FOR ADMISSIONS**

> 1. Please admit or deny that you maintained a silent partnership with James Kraft and Kevin Rossi subsequent to the notification by the Ohio Department of Liquor Control that Mr. Rossi could not serve as an actual partner.
>
> Objection: Request for Admission #1 is unduly vague and not capable of being admitted or denied due in part to the use of the undefined terms "silent partnership" and "actual partner." Subject to and without waiving the foregoing objections, Defendant James Kraft admits that he allowed Mr. Rossi to be involved in WMVH, LLC in a manner that could resemble a partner, even though no documentation existed to make him an actual partner.

{¶ 23} This court concludes that genuine issues of fact preclude summary judgment. James claimed that Kevin withdrew from WMVH and any payment to him after that time was a gift. But as set forth above, there was evidence presented to the court that would support the existence of an oral agreement between James, David, and Kevin to share the profits of WMVH despite David's and Kevin's withdrawal. David's description of a

"gentleman's agreement" and the handwritten document corroborated Kevin's claims. The existence of the agreement could be further corroborated by the payments received by both David and Kevin in the years subsequent to their removal from the limited liability company. David described one payment as "profit." James admitted treating Kevin as if he was a partner in the business. Finally, the evidence could also suggest that Kevin's and David's withdrawal as members of WMVH was primarily for the purpose of thwarting the Tied House Law, rather that limiting their interest in the business.[2]

{¶ 24} The trial court additionally found that because Kevin's capital contribution was returned to him any agreement to share profits would lack consideration. However, the initial capital contribution itself could be the consideration for such an agreement. David testified that his initial contribution was also returned, and he, too, received additional payments. For the foregoing reasons, this court sustains Kevin's assignments of error and reverses the decision of the trial court.

{¶ 25} Judgment reversed and remanded.

M. POWELL, P.J., and PIPER, J., concur.

---

2. To the extent the agreement was illegal calls into question its enforceability by a court of law. *Marchetti v. Blankenburg*, 12th Dist. Butler No. CA2010-09-232, 2011-Ohio-2212, ¶ 11. This issue is not before the court in the limited context of deciding this appeal.