[Cite as *Kish v. Scrocco*, 2013-Ohio-899.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

LORI KISH, ADMINISTRATOR OF THE )
ESTATE OF LAWRENCE KISH, )       CASE NO.    11 MA 197
                                       )
     PLAINTIFF-APPELLANT, )
                                       )
VS. )                              O P I N I O N
                                       )
FRANK SCROCCO, JR., et al., )
                                       )
     DEFENDANTS-APPELLEES. )

CHARACTER OF PROCEEDINGS:          Civil Appeal from Common Pleas Court,
                                   Case No. 09CV1345.


JUDGMENT:                          Affirmed.


APPEARANCES:
For Plaintiff-Appellant:            Attorney James Wise
                                    6630 Seville Drive
                                    Canfield, Ohio  44406



For Defendants-Appellees:           Attorney Adam Carr
                                    5824 Akron-Cleveland Road, Suite A
                                    Hudson, Ohio  44236



JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro


                                    Dated:  March 8, 2013

VUKOVICH, J.

{¶1} Plaintiff-appellant Lori Kish, Administrator of the Estate of Lawrence Kish, appeals the decision of Mahoning County Common Pleas Court granting summary judgment in favor of defendants-appellees Frank Scrocco, Jr. and Amanda Scrocco. The issue is whether there is a genuine issue of material fact as to whether the Scroccos had actual or constructive knowledge that the tree that fell and killed Lawrence Kish was diseased and at risk of falling. For the reasons expressed below, the judgment of the trial court is hereby affirmed.

## STATEMENT OF FACTS AND CASE

{¶2} On April 16, 2007, Lawrence Kish was driving on Shields Road when a tree on the Scrocco's property, 838 Shields Road, fell onto his vehicle and killed him.

{¶3} On April 14, 2009, Lori Kish, as Administrator of the Estate of Lawrence Kish, filed an action against, among others, the Scroccos. Eventually all other defendants were voluntarily dismissed and the only defendants that remained were the Scroccos.

{¶4} Two causes of action are asserted against the Scroccos in the complaint. The first is a negligence claim. The allegation against the Scroccos was that the tree exhibited outward and obvious sings of significant decay. Accordingly, the Scroccos, as property owners, had the duty to maintain the premises in a reasonably safe condition, which would include either maintaining or removing the tree that caused Lawrence's death. The second cause of action is for wrongful death. Kish claims that as a result of the Scroccos' negligent, willful, wanton and/or reckless conduct, Lawrence sustained injuries that resulted in his death. And as a result, Lawrence's beneficiaries have suffered damages.

{¶5} The Scroccos answered the complaint and then filed a motion for summary judgment. 06/19/09 Answer; 03/04/10 Summary Judgment Motion. Attached to the summary judgment motion was an affidavit of Rosemary Scrocco, the mother and mother-in-law of the Scroccos.

{¶6} Kish filed a motion in opposition to the summary judgment motion. 04/12/10 Motion in Opposition to Summary Judgment. Attached to that motion was a report from Tim Leyden of Austin Tree & Turf.

{¶7} Considering both motions and the attachments, the trial court denied the motion for summary judgment. 08/09/10 J.E. It stated that there was a genuine issue of material fact.

{¶8} Thereafter, the depositions of Lori Kish and Tim Leyden were taken. 09/27/10 Depositions. Following those, the Scroccos asked the trial court to reconsider its previous ruling on the summary judgment. The Scroccos specifically asked the trial court to consider Leyden's deposition testimony. 08/15/11 Motion for Reconsideration. Kish responded by filing a motion in opposition. 10/20/11 Motion in Opposition to Reconsideration.

{¶9} The trial court reconsidered its prior decision and granted summary judgment in the Scroccos favor. 11/01/11 J.E. Kish now appeals arguing that summary judgment should not have been granted.

ASSIGNMENT OF ERROR

{¶10} "The trial court erred in granting Defendants/Appellees' Motion for Summary Judgment."

{¶11} An appellate court reviews a trial court's decision to grant summary judgment de novo, applying the same standard used by the trial court. *Parenti v. Goodyear Tire & Rubber Co.*, 66 Ohio App.3d 826, 829, 586 N.E.2d 1121 (9th Dist.1990). Under Civ.R. 56, summary judgment is only proper when, viewing the evidence most strongly in favor of the nonmovant, reasonable minds conclude that no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. *Doe v. Shaffer*, 90 Ohio St.3d 388, 390, 738 N.E.2d 1243 (2000). A fact is material when it affects the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999).

{¶12} Kish is claiming that the trial court incorrectly concluded that the negligence claim against the Scroccos could not survive summary judgment. In order to sustain a claim of negligence, Kish must show: a duty owed by the defendants to the deceased, a breach of that duty, injury or damages, and the existence of proximate cause between the breach and the injury or damages. *Menifee v. Ohio Welding Products, Inc.*, 15 Ohio St.3d 75, 77, 472 N.E.2d 707

(1984). The existence of a duty is a question of law. *Mussivand v. David*, 45 Ohio St.3d 314, 318, 544 N.E.2d 265 (1989).

{¶13} The Ohio Supreme Court has held:

> Although there is no duty imposed upon the owner of property abutting a rural highway to inspect trees growing adjacent to the roadway or to ascertain defects which may result in injury to a traveler on the highway, an owner having actual or constructive knowledge of a patently defective condition of a tree which may result in injury to a traveler must exercise reasonable care to prevent harm to a person lawfully using the highway from the falling of such tree or its branches.

*Heckert v. Patrick*, 15 Ohio St. 3d 402, 402, 473 N.E.2d 1204 (1984).

{¶14} Thus, the Scroccos would have a duty if they had actual or constructive knowledge of the condition of the tree that fell and killed Kish. However, if there is no knowledge of the tree's condition, either actual or constructive, then the landowner is not liable. *Id.* at 405.

{¶15} The Eighth Appellate District has upheld a municipal court's adoption of a magistrate's decision that concluded that the tree was sick enough that a reasonable person viewing it would notice it as dangerous. *Levine v. Brown*, 8th Dist. No. 92862, 2009-Ohio-5012, ¶ 25-26. Although the appellate court's decision was primarily based upon the fact that proper Civ.R. 53 evidence was not presented to the municipal court to review the factual findings of the magistrate, the appellate court also stated that the magistrate's finding was supported by photographs in the record showing the dead tree was riddled with termite holes, with no live branches, bark, or green leaves. *Id.* at ¶ 25-26. Additionally, evidence presented in that case demonstrated that the tree that caused damage to the Levine's property had been dead for at least a year, that it was easily visible, and that Brown (defendant) and her husband had a history of refusing to remove trees and trim branches on their property that Levine felt may be a danger to his property. *Id.*

**{¶16}** The *Levine* case is instructive in that it shows the type of evidence that can be used to demonstrate that the property owner had actual or constructive knowledge of the diseased or dead tree that caused the damage.

**{¶17}** Here, the affidavit from Rosemary Scrocco that is attached to the motion for summary judgment states that she was watching her grandchild at the Scroccos' home on April 16, 2007. Affidavit ¶ 3. There was a storm that day that had strong winds and the tree that killed Lawrence had fallen during the storm. Affidavit ¶ 4-6. She indicated that the previous autumn, the tree was full of leaves. Affidavit ¶ 7. She stated she was a frequent visitor to the property and that the tree did not exhibit any signs of disease or decay until after it fell. Affidavit ¶ 8. She indicated that the tree did not have any leaves on it before it fell because it was too early in year and that other neighborhood trees likewise did not have any leaves at that time. Affidavit ¶ 6.

**{¶18}** This affidavit provides evidence that the Scroccos did not have actual or constructive knowledge of the tree's condition. Thus, in order to survive summary judgment, Kish must establish a genuine issue of material fact as to whether the Scroccos had actual or constructive knowledge of the condition of the tree.

**{¶19}** Kish's motion in opposition to summary judgment was supported by a report from Tim Leyden of Austin Tree & Turf and Leyden's deposition testimony. While Leyden's deposition testimony is proper summary judgment evidence pursuant to Civ.R. 56(C), the report was not incorporated through an affidavit. Therefore, it was not proper summary judgment evidence pursuant to Civ.R. 56(C) and (E) and could not be considered in support of the motion in opposition to summary judgment. Civ.R. 56(C) and (E); *Toth v. United States Steel Corp.*, 9th Dist. No. 10CA009885, 2012-Ohio-1390, ¶ 11 (report must be incorporated by an affidavit to be proper summary judgment evidence).

**{¶20}** That said, as is shown below, even if we consider the report in conjunction with the deposition testimony, Kish is unable to show that there is a genuine issue of material fact as to whether the Scroccos had actual or constructive knowledge about the condition of the tree.

{¶21} The report and deposition establish that Austin Tree & Turf is owned by Leyden. For approximately the last 14 years he has been hired in the Mahoning County area to cut down trees, plant trees, keep them alive, and do appraisal and consultation work on putting in trees and taking them out. Depo. Tr. 13. He was given pictures of the tree after it had fallen to assess whether there was any evidence that the tree was diseased and decaying.

{¶22} Kish contends that the report from Leyden concludes that the tree exhibited several warning signs that it was decaying and hazardous. Kish further asserts that Leyden also surmised that the Scroccos should have noticed this hazard and taken actions to abate the tree.

{¶23} On page two of the report under the heading "Signs and Symptom's of Decay" it states:

> Basal crack, collar cracks, loose and dead bark, conks, fungus fruiting structures, sap flowing from the trunk, abnormal root flare or diminished roots. Some of these sings [sic] are quite evidence on this stump and should have been flashing red light's [sic] for high risk hazard. The home owner or other persons of authority should have taken action to abate this tree.

{¶24} The report specifically mentions loose bark, the lack of structural integrity to the inside of the tree, a mushroom (conk) in the fracture of the tree and callous from an old wound in the root flare. As to the loose bark, the report notes that there is bark missing from the tree. However, Leyden could not determine if this happened as a result of the tree failing or if the loose and missing bark was present before the tree fell. Therefore, the bark does not provide evidence of decay that the Scroccos had actual or constructive knowledge of.

{¶25} Likewise, the picture showing the inside of the tree after it fell is not evidence that the Scroccos had actual or constructive knowledge of the defective condition of the tree. While the picture does show a lack of structural integrity inside the tree, i.e. it was hollow, Leyden could not confirm that such evidence was visible from the outside of the tree before it fell. Leyden Depo. Tr. 40.

**{¶26}** The only two features of the tree that can be considered to have been visible prior to the tree falling were the conk in the fracture of the tree and the callous on the root of the tree that was from an old wound. There is nothing to suggest that these two factors alone provided either constructive or actual knowledge of the defective condition of the tree.

**{¶27}** Rather, the evidence instead suggests that even Leyden did not notice structural problems with this tree. During the deposition, Leyden explained his report in further depth and explained his knowledge of the tree in question. Leyden stated that he lived in the area and drove past the tree often. Depo. 19. However, he stated that while he noticed structural problems with other trees on Shields Road, he did not notice any structural problems on this tree prior to it falling. Tr. 25. He even indicated in the past when he has noticed trees that are obviously going to fall on the road, he has called ODOT about the trees. Depo. Tr. 28. However, he did not call anyone about this tree. Depo. Tr. 28-29. He also stated that from the fall 2006 aerial pictures that he viewed of that area, he did not notice any dead trees. Depo. Tr. 31. In his report, he also indicated that the pictures of the trees show that none of the trees were in leaf at the time the tree fell and killed Lawrence Kish. Therefore, his testimony indicates that prior to the tree falling he did not notice any signs of decay, that it was not unusual for the tree not to have leaves prior to it falling because none of the trees were in leaf and that there is no evidence that the autumn before it fell that it was not in leaf.

**{¶28}** Along with the above, during his deposition, Leyden was asked whether he could offer an opinion as to whether the Scroccos would have known of the condition of the tree. The colloquy is as follows:

Q. Okay. And it's fair to say that you're not able to point to anything on the tree that fell that would have been visible to the homeowner for sure before it fell except for the old wound at ground level on street side; correct?

A. Either way I can't – I can't determine in this picture whether this was present, so I can't tell you that –

Q. Okay.

A. – whether the homeowner saw it or not. It could have been there. It could have not been there.

Q. You can't tell if the bark was missing on the day in question from just looking at this picture; correct?

A. Right. I can't tell if that was – when the – when the tree fell, it would have stressed the wood on each side. If this bark – this bark was loose prior to that, and that – and there was insect decay and damage. I don't know if there were any outwards signs of conks or mushrooms on that side of the tree. I can't tell you, because I couldn't find evidence of that. I was not provided any evidence of that.

Leyden Depo. Tr. 40-41.

{¶29} Furthermore, Leyden testified that he could not give this tree a hazard rating from the information provided. Leyden Depo. Tr. 43. A hazard rating of 3 or above indicates that the tree has to be removed or needs some other type of structural reinforcement. Leyden Depo. Tr. 33-35, 44.

{¶30} Considering all of the above, the report and deposition did not create a genuine issue of material fact as to whether the Scroccos had actual or constructive knowledge of the defective condition of the tree.

{¶31} It is noted that the Scroccos also argue that the falling of the tree was an "Act of God." It is well-settled that if an "Act of God" is so unusual and overwhelming as to do damage by its own power, without reference to and independent of any negligence by defendant, there is no liability. *Wertz v. Cooper*, 4th Dist. No. 06CA3077, 2006-Ohio-6844, ¶ 15 citing *Piqua v. Morris*, 98 Ohio St. 42, 49, 120 N.E. 300 (1918). It has been explained that an act of God is:

Any irresistible disaster, the result of natural causes, such as earthquakes, violent storms, lightening and unprecedented floods. It is such a disaster arising from such causes, and which could not have been reasonably anticipated, guarded against or resisted. It must be due directly and exclusively to such a natural cause without human intervention. * * * If the injury is in part occasioned by the wrongful act

or the negligent act of any persons concurring therein and contributing thereto, such person will be liable therefor and this applies to a municipal corporation as well as to a natural person.

*Piqua* at 47-48.

**{¶32}** That said, if proper care and diligence on the part of defendant would have avoided the act, the act is not excusable as an "Act of God." *Wertz* at ¶ 15. Here we do not need to decide whether an "Act of God" relieves the Scroccos of liability because as is shown above, there is no genuine issue of material fact as to whether the Scroccos had actual or constructive knowledge of the condition of the tree. *Id.* at ¶ 16. Since the Scroccos provided evidence that they had no knowledge of the condition of the tree and Kish has been unable to point to any evidence that the Scroccos knew of the condition, summary judgment was appropriately granted for the Scroccos. Accordingly, this court does not need to answer the question of whether the Scroccos are relieved of liability under the "Act if God" defense. *Id.*

**{¶33}** In conclusion, the sole assignment of error lacks merit. Kish has failed to point to evidence which could establish that the Scroccos had actual or constructive knowledge of the tree's defective condition. The judgment of the trial court is hereby affirmed.

Waite, J., concurs.
DeGenaro, P.J., concurs.