[Cite as *Johnston v. Filson*, 2014-Ohio-4758.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLINTON COUNTY

BRIAN JOHNSTON, et al.,                    :

    Plaintiffs-Appellants,              :            CASE NO.   CA2014-04-007

                                       :                    O P I N I O N
  - vs -                                                        10/27/2014
                                       :

SCOTT FILSON, et al.,                      :

    Defendants-Appellees.               :


CIVIL APPEAL FROM CLINTON COUNTY COURT OF COMMON PLEAS
Case No. CV20120651


Boyd W. Gentry, 2661 Commons Blvd., Suite 100, Beavercreek, Ohio 45431, for plaintiffs-appellants, Brian Johnston and Sherry Malott

Freund, Freeze & Arnold, T. Andrew Vollmar, 1 South Main Street, Suite 1800, Dayton, Ohio 45402, for defendants-appellees, Scott and Sherry Filson

Todd Smith, 6047 Frantz Road, Suite 203, Dublin, Ohio 43017, for third party defendant-appellee, UMR

Reliance Standard Life Insurance Company, 2001 Market Street, Suite 1800, Philadelphia, PA 19103, third party defendant-appellee


    **PIPER, J.**

    {¶ 1}   Plaintiff-appellants, Brian Johnston and Sherry Malott, appeal a decision of the

Clinton County Court of Common Pleas, granting summary judgment in favor of defendant-

appellants, Scott Filson and Sherry Filson.

{¶ 2} Johnston and his fiancée, Malott, were tenants who rented a house belonging to the Filsons. In June 2012, an unusually-strong wind storm occurred, and Johnston went outside to retrieve items that were blowing around the yard. While Johnston was outside, the top portion of a large white pine tree that was growing on the rented property broke off of its trunk, flew through the air, and fell on Johnston. Johnston sustained severe injuries, including fractured vertebrae and various head wounds.

{¶ 3} The white pine tree that fell on Johnston was approximately 40-50 years old, and stood 30-40 feet high. The tree's trunk forked approximately 17 feet into the air in what is known in the arbor industry as a "codominant leader" or "v-crotch" split. A codominant tree is marked by two separate trunks growing closely next to each other. On the day of the incident, the top portion of the tree broke off at the v-crotch, where the tree was later determined to contain decay. At the time the tree fell, however, the tree was alive and had green needles on it.

{¶ 4} Johnston and Malott filed a negligence and negligence per se action against the Filsons, and later added two counts of negligent infliction of serious emotional distress. The Filsons filed a motion for summary judgment on all claims, which was granted by the trial court after consideration of the depositions and evidence.[1] Johnston and Malott now appeal the trial court's grant of summary judgment, raising the following assignment of error.

{¶ 5} THE TRIAL COURT ERRED BY GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT.

{¶ 6} Johnston and Malott argue in their assignment of error that the trial court erred in granting summary judgment in favor of the Filsons because genuine issues remain to be

---

1. While the deposition of Sherry Filson is referenced by the parties, her deposition was never filed with the trial court and is not a part of the record on appeal.

litigated.[2]

**{¶ 7}** This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co., Ltd.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124. Civ.R.56 sets forth the summary judgment standard and requires that (1) there be no genuine issues of material fact to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to only one conclusion being adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

**{¶ 8}** The nonmoving party "may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Enterprises*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352, *2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

**{¶ 9}** In order to establish a negligence claim, the plaintiff must demonstrate a duty owed by the defendant to the plaintiff, a breach of that duty, and that the plaintiff's injury proximately resulted from the defendant's breach of duty. *Jeffers v. Olexo*, 43 Ohio St.3d 140, 142 (1989). "Duty, as used in Ohio tort law, refers to the relationship between the plaintiff and the defendant from which arises an obligation on the part of the defendant to

---

2. As the negligent infliction of emotional distress is premised upon a negligence theory, we will address the issue of negligence to analyze both claims, especially where Johnston and Malott do not argue the negligent infliction issue in their appellate brief.

- 3 -

exercise due care toward the plaintiff." *Wallace v. Ohio Dept. of Commerce*, 96 Ohio St.3d 266, 2002-Ohio-4210, ¶ 23.

{¶ 10} According to R.C. 5321.04(A)(2), landlords have a duty to "make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition." A violation of the statute that sets forth specific duties constitutes negligence per se. *Swader v. Paramount Property Mgt.*, 12th Dist. Butler No. CA2011-05-084, 2012-Ohio-1477, ¶ 22. However, negligence per se does not equate to liability per se, as negligence per se does not dispense with a plaintiff's obligation to prove that the landlord's breach was the proximate cause of the injury complained of. *Id.* Nor does demonstrating negligence per se remove a plaintiff's obligation to prove the landlord received actual or constructive notice of the condition causing the statutory violation. *Id.*

{¶ 11} Landlords will be excused from liability where they neither knew nor should have known of the factual circumstances that caused the statutory violation. *Sikora v. Wenzel*, 88 Ohio St.3d 493, 493 (2000), syllabus. "Actual notice" is defined as notice "given directly to, or received personally by, a party." *Black's Law Dictionary,* 1090 (8th Ed.2004). "Constructive notice" is notice "arising by presumption of law from the existence of facts and circumstances that a party had a duty to take notice of." *Id.*

{¶ 12} Constructive notice of an unsafe condition can be proven by showing that the unsafe condition "existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger or an invasion of private rights." *Swader* at ¶ 25 quoting *Patterson v. Ahmed*, 6th Dist. Lucas No. L-09-1222, 2010-Ohio-4160, ¶ 19.

{¶ 13} Specific to falling trees, whether a party has breached any duty owed is contingent upon whether the party had actual or constructive knowledge of the condition of

- 4 -

the tree that fell. *Kish v. Scrocco*, 7th Dist. Mahoning No. 11 MA 197, 2013-Ohio-899. In determining the condition of a tree, other courts have considered factors such as whether: the tree is alive or dead, the bark shows signs of deterioration, there are holes in the tree suggesting termite damage, there are green leaves indicating health, or generally whether the tree shows signs of decay or disease. *Id.*; *Levine v. Brown*, 8th Dist. Cuyahoga No. 92862, 2009-Ohio-5012.

{¶ 14} After reviewing the record, we find that no genuine issue of material fact remains, as the Filsons did not have actual or constructive notice that the tree's condition was such that an unsafe condition could have or should have been discovered.

{¶ 15} During his deposition, Scott Filson testified that while he did not have an understanding of what a "v-crotch" condition was on a tree, he is able to understand the difference between a dead tree and a living tree. Scott testified that he perceives the difference between a living and dead tree as a dead tree being brown while a living tree is green with growth. Scott also testified that when he visited the rental property, he would "look around," but that "nothing ever stood out to make [him] think that there was anything wrong with any of the trees in the yard." Scott also testified that nothing had changed about the tree from the time Johnston and Malott began renting the house, and that the tree looked "okay" before it fell.

{¶ 16} Scott also testified that he visually inspects the property and that he had never found any condition in the backyard or front yard of the property that he believed to be unsafe, and that he did not observe any dangerous conditions. In regard to the tree that fell, Scott testified that while he could have removed the tree or done something to tie it down, he did not because he had "no cause or reason to either remove it, cable it." Scott further testified that he did not take any action because "as far as [he] knew, the tree was fine."

{¶ 17} Scott's testimony demonstrates that he was unaware that the tree posed a

danger, or that the tree's condition was any cause for concern. In order to rebut Scott's testimony and to demonstrate that the Filsons should have known about the tree's dangerous condition, Johnston and Malott offered their own testimony via deposition, as well as the testimony of their expert witness, Gregory Lester. Even considering the facts in a light most favorable to Johnston and Malott, we find that none of the deposition testimony, or any evidence produced during discovery, created a genuine issue of material fact.

{¶ 18} When asked whether Johnston ever noticed any problems, issues, or anything that caused him concern about the tree that fell, he testified that he did not. Johnston further testified that there was no tree in the yard that caused him concerns or worried him, and that he never complained to the Filsons about the conditions of any tree on the property. Johnston also testified that he was not aware of any evidence that the tree was rotten before the tree fell, and that he did not remember seeing anything that led him to believe that the tree was in decay or dying, such as broken limbs, fallen limbs, or excessive needles on the ground.

{¶ 19} Johnston also testified that he noticed an area of discoloration on the tree, and that he had, since the time of the incident, come to believe that the discoloration was rot. Johnston testified that prior to the tree falling, he believed that the spot was sap and that he never reported the dark spot to the Filsons or complained that such dark spot was indicative of a hazardous condition.

{¶ 20} Malott testified, and stated that before the tree fell, she would sit under it in a hammock with her dog. She also testified that she saw a "dark streak" that in her opinion was sap. Malott testified that the spot she believed was sap was the "only thing I ever noticed about that tree" and that she did not report the sap or dark patch to anyone. While Malott testified that the dark spot was visible to anyone who entered the yard, she continually referred to the spot as appearing to be sap and further testified that she would lie under the

tree in a hammock despite seeing the dark spot. When Malott was asked whether she ever saw anything about the tree that led her to believe that it was in decay or dying, she answered, "No. No." When asked whether there was anything different about the condition of the tree that fell as compared to the other trees in the yard, Malott responded, "I can't think of any other thing that would lead me to think that there's anything different about the condition."

{¶ 21} Malott testified that during her time in the home, she and Johnston complained about several deficiencies of the rental property to the Filsons, including a sliding glass door in the back that did not work, snow coming in the front door, an air conditioning problem, a problem with the heating, water coming into the garage, as well as an infestation of ants. However, Malott never complained about the tree being rotten, or having any problems. Nor did Malott report or complain about the dark spot on the tree that she believed to be sap.

{¶ 22} Malott's father, Frank Feirl, was deposed by both parties, and testified that he has been a neighbor to the Filsons' rental property for many years and was familiar with their property. Feirl was asked by the Filsons whether he had any concerns about the tree that fell, and he answered, "why, no." Feirl also testified that he did "absolutely not" notice any evidence of rot on the tree before it fell, but saw rot once the tree was on the ground. Feirl also testified that he remembered the wind blowing very hard at the time the tree fell, and that the windstorm came on without any notice.

{¶ 23} Gregory Lester was also deposed by both parties, and testified that he is a certified arborist who has been a professional in the agricultural business for 55 years. Lester testified that all codominant trees will fail because of the v-shaped crotches, and that such probability of failure is 100 percent. Lester also testified that the tree was a hazard given that it was a codominant tree with decay in the v-crotch area. Lester testified that he saw the rot in the tree at the point where other witnesses testified that the area looked like

sap. Lester estimated that the dark spot was approximately 16-17 feet up the trunk of the tree, and that he was not aware to what degree the spot was visible because he had never seen the tree before it fell.

{¶ 24} Although Lester had not seen the tree while it was standing, he opined that it would have been "pretty difficult" to see the spot because it was "way up in the air. You would have to look down on top of it. It's hidden behind the area that broke off." Lester further testified that the tree contained healthy wood, and that the tree was alive before it fell, as it contained live branches, live bark, and had green needles.

{¶ 25} Based on the testimony presented, there are no genuine issues of material fact to be litigated. In order for there to have been constructive notice that the tree was a hazard or likely to fall, the dangerous condition must have existed in such a manner that it could or should have been discovered, that it existed for a sufficient length of time to have been discovered, and that if it had been discovered it would have created a reasonable apprehension of a potential danger or an invasion of private rights. The testimony does not establish that the Filsons knew or should have known that the tree posed a possible danger, as the witnesses all testified that the tree was alive before it fell, and that it had living branches, healthy bark, and green needles. The tree did not contain noticeable holes, as if termite damage had occurred. Nor did the tree show any signs of decay or disease other than a small colored patch Johnston and Malott thought was sap.

{¶ 26} Neither Johnston nor Malott ever sensed an issue with the tree, and Malott even reclined under the tree on multiple occasions in a hammock. Although the couple reported several complaints to the Filsons regarding the state of their rental home, neither ever reported any concerns regarding the tree, and both testified that there was never any cause for concern that the tree would fall in their backyard.

{¶ 27} While arborist Lester did testify that all trees with codominant trunks will

- 8 -

eventually fall and that the tree in question was a hazard because of its v-crotch, the fact that an expert arborist knows that trees with codominant trunks will eventually fail does not create a genuine issue of fact. Instead, the record demonstrates that the Filsons did not fail to uphold their duty where the tree did not show any signs that it was about to fall or break during a strong wind storm and strike one of the tenants. *See Kish v. Scrocco*, 7th Dist. Mahoning No. 11 MA 197, 2013-Ohio-899 (affirming grant of summary judgment despite expert testimony that a tree was hazardous where the tree did not show any outward signs of decay or disease that would place the parties on actual or constructive notice of danger).

{¶ 28} Lester was not able to testify that the area of discoloration due to decay was visible from its location approximately 15 feet above the ground, or whether such discoloration would place someone on notice of decay. While Lester would certainly have notice of the tree's condition given his expertise and 55 years' experience working with codominant trees, the record does not demonstrate that the *Filsons* had any constructive notice that the tree was hazardous.

{¶ 29} We find that there are no genuine issues of material fact that require further litigation, and that the Filsons are entitled to judgment as a matter of law. As such, Johnston and Malott's assignment of error is overruled.

{¶ 30} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.