[Cite as *McLoughlin v. Williams*, 2015-Ohio-3287.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| SARAH MCLOUGHLIN, A Minor, by Her Parents and Next Friends, John P. McLoughlin and Tabetha McLoughlin, | : | |
| | : | CASE NO.  CA2015-02-020 |
| Plaintiffs-Appellants, | : | O P I N I O N<br>8/17/2015 |
| | : | |
| - vs - | : | |
| | : | |
| CHERYL A. WILLIAMS, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2013 CVH 00050

Becker & Cade, Dennis A. Becker, 526A Wards Corner Road, Loveland, Ohio 45140, for plaintiffs-appellants

Marshall Dennehey Warner Coleman & Goggin, P.C., Timothy B. Schenkel, Matthew D. Hamm, 312 Elm Street, Suite 1850, Cincinnati, Ohio 45202, for defendant-appellee

Kari Cox, 5652 Viewpoint, Apt. A, Cincinnati, Ohio 45213, defendant, pro se

**PIPER, P.J.**

{¶ 1}  Plaintiff-appellant, Sarah McLoughlin, a minor, by her parents John and Tabetha McLoughlin, appeals a decision of the Clermont Count Court of Common Pleas granting a motion for summary judgment in favor of defendant-appellee, Cheryl Williams.

{¶ 2} Mariah Cox, who is Williams' granddaughter, and Sarah were friends who lived in the same neighborhood. Mariah invited Sarah to join her on an overnight stay at her grandmother's house. Sarah's parents allowed her to attend the sleepover, which began on Friday. On that evening, and while at Williams' home, Mariah rode an ATV owned by a man who lived with Williams, Jeff Brandenburg.[1] Being afraid, Sarah did not ride the ATV that night. However, the next morning, Sarah changed her mind, and rode the ATV with Mariah driving. The children were supervised outside by Mariah's mother, Kari Cox and Brandenburg. With nine-year-old Sarah as her passenger, seven-year-old Mariah drove the ATV off Williams' property, onto the street running through the neighborhood. Unfortunately, Mariah crashed into an abutment causing the ATV to flip, injuring both girls.

{¶ 3} Sarah's parents filed a personal injury suit against Cox and Williams. Cox did not defend the suit, and a default judgment was entered against her. Williams answered the complaint, and discovery followed. Williams filed a motion for summary judgment, which was granted by the trial court. The McLoughlins now appeal the trial court's grant of summary judgment, raising the following assignment of error.

{¶ 4} THE TRIAL [sic] ERRED IN GRANTING SUMMARY JUDGMENT ON BEHALF OF DEFENDANT, CHERYL WILLIAMS.

{¶ 5} The McLoughlins argue in their assignment of error that the trial court erred in granting summary judgment to Williams.

{¶ 6} This court's review of a trial court's ruling on a summary judgment motion is de novo. *Lindsay P. v. Towne Properties Asset Mgt. Co.*, 12th Dist. Butler No. CA2012-11-215, 2013-Ohio-4124. Civ.R.56 sets forth the summary judgment standard and requires that there be no genuine issues of material fact to be litigated, the moving party is entitled to judgment

---

1. Brandenburg passed away during the pendency of the proceedings, and is not a party to this action.

as a matter of law, and reasonable minds can come to only one conclusion which is adverse to the nonmoving party. *Slowey v. Midland Acres, Inc.*, 12th Dist. Fayette No. CA2007-08-030, 2008-Ohio-3077, ¶ 8. The moving party has the burden of demonstrating that there is no genuine issue of material fact. *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).

{¶ 7} The nonmoving party "may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385 (1996). A dispute of fact can be considered "material" if it affects the outcome of the litigation. *Myers v. Jamar Enterprises*, 12th Dist. Clermont No. CA2001-06-056, 2001 WL 1567352,*2 (Dec. 10, 2001). A dispute of fact can be considered "genuine" if it is supported by substantial evidence that exceeds the allegations in the complaint. *Id.*

{¶ 8} In order to establish a negligence claim, the plaintiff must demonstrate a duty owed by the defendant to the plaintiff, a breach of that duty, and that the plaintiff's injury proximately resulted from the defendant's breach of duty. *Johnston v. Filson*, 12th Dist. Clinton No. CA2014-04-007, 2014-Ohio-4758, ¶ 9. "The existence of a duty is fundamental to establishing actionable negligence, without which there is no legal liability." *Uhl v. Thomas*, 12th Dist. Butler No. CA2008-06-131, 2009-Ohio-196, ¶ 10. The McLoughlins contend that Williams owed Sarah a duty because Sarah was a social guest or because Williams stood in loco parentis to the child.

{¶ 9} According to the Ohio Supreme Court, "the term 'in loco parentis' means charged, factitiously, with a parent's rights, duties, and responsibilities. * * * A person in loco parentis has assumed the same duties as a guardian or custodian, only not through a legal proceeding." *State v. Noggle*, 67 Ohio St.3d 31, 33, (1993). "The key factors of an *in loco parentis* relationship have been delineated as the intentional assumption of obligations

incidental to the parental relationship, especially support and maintenance." *Evans v. Ohio State Univ.*, 112 Ohio App.3d 724, 736 (10th Dist.1996)

{¶ 10} The record is clear that Williams did not stand in loco parentis to the child. The undisputed facts indicate that Williams did not support, accept, or assume responsibility for the care or maintenance of Sarah. Instead, Williams only allowed the child to accompany her grandchild for a sleepover, and the night before the accident was the first and only time the child had stayed at Williams' home. Nor did Williams assume the duties of a guardian, as the record indicates that Mariah's mother, Cox, was providing direct supervision of the children as they played outside. There is no indication in the record that Williams treated Sarah as a member of her family, or discharged any parental duties toward the child. As such, the trial court was correct in determining that Williams owed no duty based on the doctrine of in loco parentis.

{¶ 11} The McLoughlins also argue that Williams breached a duty to Sarah because Sarah was a social guest of Williams, and Williams failed to uphold the duty a premises owner owes her guests. A host who invites a social guest to her premises owes the guest the duty to exercise ordinary care not to cause injury to her guest by any act *of the host* or by any activities carried on *by the host* while the guest is *on the premises*, and to warn the guest of any condition *of the premises* which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition. *Brennan v. Schappacher*, 12th Dist. Butler No. CA2008-09-231, 2009-Ohio-927, ¶ 11. A host is not an insurer of the safety of a guest and owes a duty only to refrain from acts of negligence and to warn of concealed or hidden dangers which he has reason to believe the guest would not discover through the use of ordinary care. *Galinari v. Koop*, 12th Dist. Clermont No. CA2006-10-086, 2007-Ohio-4540, ¶ 11.

- 4 -

{¶ 12} The facts are undisputed that the accident did not occur on Williams' property. Additionally, the ATV the children rode did not belong to Williams, and instead, was owned by Brandenburg. Williams testified she knew Mariah rode on the ATV the night before the accident, but that she had no knowledge of Sarah riding on the ATV before the accident occurred.

{¶ 13} At the time of the accident, Williams was inside her home cleaning, and Cox, along with Brandenburg, was outside supervising the children.[2] There is no indication in the record that Williams allowed the children to ride the ATV or gave permission to either child to ride on the ATV. Williams testified that she was not outside with the children at any time on the morning of the accident, that she never exercised any control over Sarah or provided her direction, and that she never heard Brandenburg give the children permission to ride the ATV. Williams also testified that the children never asked her if they could go outside, and that Cox would have given them that permission.

{¶ 14} Sarah testified in her deposition that Brandenburg gave Mariah permission to ride the ATV, and that Williams was inside her house when Brandenburg gave the children permission to ride it.[3] Sarah also testified that Brandenburg supervised the children on Friday night when Mariah first began riding the ATV and that he was the adult outside "supervising" the children the entire time. Sarah also testified that it was Brandenburg, not Williams, who gave her permission to ride the ATV.

{¶ 15} When the children started riding the ATV, with Mariah in the front closest to the steering and Sarah straddled behind her, Cox and Brandenburg were supervising the

---

2. The record indicates that a referral was made against Cox to Children Services for her lack of supervision over the children.

3. Sarah later testified that Williams was present when Brandenburg gave the children permission to ride the ATV, but Sarah never testified that Williams was asked if they could ride the ATV or that Williams ever gave permission or even discussed them riding the ATV.

children. Sarah specifically testified more than once that when she and Mariah rode the ATV on the morning of the accident, Williams was inside her house. Sarah also testified that she understood Brandenburg to be in charge of the ATV because he owned it and that "he was the one who got to make all the decisions about the ATV."

{¶ 16} This evidence demonstrates that Williams did not assume a duty to Sarah on the day of the accident, as the duty to supervise and make reasonable decisions for the children was specific to Brandenburg and Cox. At no time did Williams either permit the children to ride the ATV or exert any control or supervision over the children. As such, and without Williams owing a duty to Sarah, the trial court properly determined that Williams cannot be liable for negligence as a matter of law.

{¶ 17} Furthermore, and as found by the trial court, we would also note that Sarah assumed the risk when she rode the ATV that day. The effect of raising primary assumption of the risk as a defense, if successful, "means that the duty element of negligence is not established as a matter of law, [preventing] the plaintiff from even making a prima facie case." *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431-432 (1996). "Primary assumption of the risk relieves a recreation provider from any duty to eliminate the risks that are inherent in the activity * * * because such risks cannot be eliminated." *Whisman v. Gator Invest. Properties, Inc.*, 149 Ohio App.3d 225, 236, 2002-Ohio-1850 (1st Dist.). "The types of risks associated with [an] activity are those that are foreseeable and customary risks of the * * * recreational activity." *Pope v. Willey*, Clermont App. No. CA2004-10-077, 2005-Ohio-4744, ¶ 11. "Losing control and flipping an ATV is a foreseeable and customary risk associated with the activity of driving or riding on an ATV." *Curtis v. Schmid*, 5th Dist. Delaware No. 07 CAE 11 0065, 2008-Ohio-5239, ¶ 56; *Paxton v. Ruff*, 12th Dist. Butler No. CA97-04-089, 1998 WL 8695, (Jan.12, 1998). Generally speaking, children can assume the risk of a recreational activity. *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-

Ohio-379, ¶ 8.[4]

**{¶ 18}** The record is clear that Sarah assumed the foreseeable and customary risk associated with riding on an ATV, and that she had some appreciation for the inherent danger of riding an ATV. Sarah indicated that she did not ride on the ATV on Friday night because she was apprehensive. During her deposition, Sarah stated that she was "scared to get on so I didn't get on," but that she later changed her mind because riding it looked "really, really fun." Sarah also testified that she thought that Brandenburg was irresponsible to have let them ride the ATV because he allowed them to "get on it without any protection. We didn't have helmets or anything on us." Sarah also testified that when she was getting on the ATV, the "first thought that came in to [her] head," was that her mother and father would not approve of her riding on the ATV. Thus, and while Sarah was nine years old at the time of the accident, her own testimony indicates that she was mature enough to appreciate the risks associated with riding on an ATV, and that she assumed the risk because she wanted to experience potential fun.

**{¶ 19}** After reviewing the record, we find that the trial court properly granted summary judgment, as there are no genuine issues of material fact that require further litigation. As such, the McLoughlins' assignment of error is overruled.

**{¶ 20}** Judgment affirmed.

S. POWELL and M. POWELL, JJ., concur.

---

4. While some might debate the appropriateness of applying assumption of the risk to children of tender years, the Ohio Supreme Court has clearly announced that a child can assume the risks inherent in recreational activities and that such theories apply "regardless of whether the activity was engaged in by children or adults, or was unorganized, supervised, or unsupervised." *Craycraft* at ¶ 8. The Ohio Supreme Court has thus analyzed assumption of the risk on multiple occasions, and as it applied to injuries that occurred while children were building a chair and when playing the game "kick-the-can." *Craycraft*; *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990).