[Cite as *Young v. Eagle*, 2017-Ohio-7211.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| AALIYAH YOUNG, A Minor By and Through Her Natural Parent and and Guardian, Chasity Fussner, et al., | : | CASE NO. CA2016-09-063 |
| | : | |
| Plaintiffs-Appellants, | : | O P I N I O N 8/14/2014 |
| | : | |
| - vs - | : | |
| | : | |
| THOMAS EAGLE, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2014CVH00982

Henry D. Acciani, 600 Vine Street, Suite 1600, Cincinnati, Ohio 45202, for plaintiffs-appellants

Linn & Grendell, Douglas Linn, 7588 Central Parke Boulevard, Suite 227, Mason, Ohio 45040, for defendant-appellee, Thomas Eagle

McCaslin, Imbus & McCaslin, Thomas J. Gruber, 900 Provident Bank Building, 632 Vine Street, Cincinnati, Ohio 45202, for defendants-appellees, Paul A. Eagle and Joan C. Eagle

**M. POWELL, J.**

{¶ 1} Appellant Aaliyah Young, a minor, appeals the decision of the Clermont County Court of Common Pleas granting summary judgment in favor of Thomas Eagle, Paul Eagle, individually and in his capacity as trustee, and Joan Eagle (collectively "the Eagles").

{¶ 2} In 2012, Jerry Young, Aaliyah's father, was living with Thomas at Thomas' home in Loveland, Ohio. Paul, Thomas' father, was the trustee of a trust that owned the home. Joan is Paul's wife and Thomas' mother but otherwise has no connection to this case.

{¶ 3} On a day in July 2012, Aaliyah's mother, Chasity Fussner, brought four-year-old Aaliyah and her sister Ebony to Thomas' home so that Jerry could spend time with his children. Aaliyah and Ebony were playing outside and Jerry was monitoring them. The two children asked their father if they could play on a tricycle that was in the home's garage. Young gave his daughters permission to play on the tricycle.

{¶ 4} The tricycle is larger than a typical children's tricycle. Similar in appearance to a bicycle, it has a metal frame, pedals, a chain and sprockets, and what appear to be bicycle size tires. There is a wooden platform behind the driver's seat with enough room for a small person to stand on. The tricycle's rear axle is positioned immediately next to and on the same level as the standing platform. The rear sprocket and chain are unguarded.

{¶ 5} Thomas purchased the tricycle at a garage sale in approximately 2000. He bought it for his daughter, who was then five years old. Neighborhood children rode the tricycle and anyone was free to use it. Thomas could not recall any child ever suffering an injury while using the tricycle.

{¶ 6} Aaliyah and Ebony played with the tricycle for about 20 minutes before the accident occurred. Ebony was pedaling while Aaliyah stood behind her on the platform. Aaliyah stepped off the platform. She was unsteady and reached down to balance herself. Aaliyah's hand touched the unguarded rear sprocket and chain and she suffered serious injuries, requiring the amputation of several fingers.

{¶ 7} In July 2014, Aaliyah, through Chasity as her legal guardian, and Chasity, individually, filed suit against the Eagles. The first count of the complaint alleged that the Eagles breached a duty of care owed to Aaliyah in failing to remove the tricycle from the

property, which Aaliyah alleged was a dangerous instrumentality, a dangerous condition, and an attractive nuisance. The second count alleged that the Eagles designed or constructed the tricycle, that the design was defective and dangerous, and that the design proximately resulted in Aaliyah's injuries. The third count set forth a derivative claim by Chasity alleging lost wages, medical expenses and other damages related to the Eagles' negligence.

{¶ 8} Thomas moved for summary judgment, as did Paul and Joan, separately. Thomas supported his motion with his affidavit, which averred that he purchased the tricycle as described at the garage sale and had not made any modifications to it. Thomas further averred that in the time he owned the tricycle many children had used it without injury. Thomas did not witness the accident and he did not give Aaliyah permission to use the tricycle.

{¶ 9} The trial court granted summary judgment in favor of the Eagles. With respect to the first count of the complaint, the court concluded that the tricycle was neither a dangerous instrumentality per se nor a dangerous instrumentality as used by Aaliyah. The court found that the attractive nuisance doctrine was inapplicable because Aaliyah was not a trespasser at the home. Finally, the court found that Aaliyah was engaged in a recreational activity when injured, that she assumed the risk of any injury, and that she failed to produce facts showing that the Eagles acted recklessly or intentionally with respect to her injuries. The court dismissed the second count of the complaint because the plaintiffs failed to produce facts demonstrating that the Eagles designed or constructed the tricycle. The court also dismissed the complaint's third count because it was derivative of and dependent upon the first two causes of action.

{¶ 10} Aaliyah assigns one error for our review.

{¶ 11} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT FOR ALL APPELLEES.

{¶ 12} Aaliyah raises two issues within her assignment of error. First, Aaliyah argues that the court should not have shielded the Eagles from liability under the primary assumption of risk doctrine because the Eagles were not participants in the recreational activity. Second, Aaliyah contends that the court erred in not applying the attractive nuisance doctrine.

{¶ 13} An appellate court reviews a trial court's decision on a motion for summary judgment de novo, i.e., we review independently and without deference to the decision of the trial court. *Flagstar Bank, FSB v. Sellers*, 12th Dist. Butler No. CA2009-11-287, 2010-Ohio-3951, ¶ 7. Summary judgment is proper when there is no genuine issue of material fact remaining for trial, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. *See* Civ.R. 56(C); *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

### Claims against Paul and Joan Eagle

{¶ 14} Before we address the merits of Aaliyah's arguments we first address her claims against Paul, both individually and as trustee, and Joan. There are no facts in the summary judgment record that would give rise to any theory of negligence against Paul and Joan individually. Their only connection to this case is that they are Thomas' parents. Consequently, we affirm the court's dismissal as to any claims related to Paul and Joan individually.

{¶ 15} There are also no facts in the summary judgment record that would support liability against Paul in his capacity as trustee of the trust that owns the home. The Ohio Supreme Court has stated that:

> the test to be applied in every case involving the liability of a property owner for injuries arising from the defective condition of premises under lease to another is whether the landowner was in possession or control of the premises, or the part thereof, the disrepair of which caused the injury. The lessor is not liable for

injuries to a third party in the absence of authority to exercise control over the premises to the exclusion of any control by the lessee. The control necessary as the basis for tort liability implies the power and the right to admit people to the premises and to exclude people from it, and involves a substantial exercise of that right and power.

*Wills v. Frank Hoover Supply*, 26 Ohio St.3d 186, 188 (1986). (Citations omitted.) In determining issues of control between an owner and a tenant, "the logical starting point is the lease." *Carrozza v. Olympia Mgmt.*, 12th Dist. Butler Nos. CA96-11-228 and CA96-11-234, 1997 Ohio App. LEXIS 3896, *5-6 (Sept. 2, 1997).

{¶ 16} The record reflects that there was no lease between the trust and Thomas. Instead, the circumstances surrounding Thomas' use of the home are typical of that of a parent attempting to safeguard property for an adult child with financial issues. Years earlier, Paul purchased vacant land so that Thomas could build a home. Thomas built the home and Paul later transferred him the title. Thomas began borrowing against the home and eventually transferred the home back to his father when he was experiencing financial difficulties.

{¶ 17} Ultimately, Paul transferred the home into a trust. Paul explained that he wanted to ensure that Thomas had a place to live in the event Paul died because Thomas is a spendthrift. Paul seldom visited the home, perhaps two or three times a year, and just to see a grandchild. Based on the summary judgment record, we conclude that Paul as trustee did not have possession or control of the home for purposes of imposing tort liability. Accordingly, we affirm the trial court's dismissal of Paul as trustee.

Primary Assumption of Risk

{¶ 18} To establish a negligence claim, the plaintiff must demonstrate a duty owed by the defendant to the plaintiff, a breach of that duty, and that the plaintiff's injury proximately resulted from the defendant's breach of duty. *McLoughlin v. Williams*, 12th Dist. Clermont

No. CA2015-02-020, 2015-Ohio-3287, ¶ 8.  The trial court granted summary judgment in favor of the Eagles, in part, because it found that Aaliyah was engaged in a recreational activity and therefore assumed the risks inherent with riding a tricycle.  Under the doctrine of "primary assumption of risk," an individual who engages in a recreational activity assumes the ordinary risks of that activity and cannot recover for injuries unless the defendant's actions were either reckless or intentional.  *Wolfe v. AmeriCheer, Inc.*, 10th Dist. Franklin No. 11AP-550, 2012-Ohio-941, ¶ 14, citing *Marchetti v. Kalish*, 53 Ohio St.3d 95 (1990), syllabus.  "[A] successful primary assumption of risk defense means that the duty element of negligence is not established as a matter of law."  *Gallagher v. Cleveland Browns Football Co.*, 74 Ohio St.3d 427, 431-432 (1996).

{¶ 19} The Ohio Supreme Court adopted the primary assumption of risk doctrine in *Marchetti*, where the injured party and the alleged tortfeasor were both participants in a recreational activity.  *Id.* at syllabus.  In a companion case, the court included spectators of recreational activities within the scope of the rule.  *Thompson v. McNeill*, 53 Ohio St.3d 102, 104 (1990).  In a later case, the court concluded that the age of the injured participant or spectator, and whether he or she could appreciate the inherent risks involved in the recreation was immaterial to whether liability could attach.  *Gentry v. Craycraft*, 101 Ohio St.3d 141, 2004-Ohio-379, syllabus.  Instead, an injured party must demonstrate that the tortfeasor acted recklessly or intentionally.  *Id.*

{¶ 20} Aaliyah does not dispute that she was engaged in a recreational activity when the injury occurred.  Instead, she argues that the court should not have concluded that she was barred from recovering from Thomas because he was not a participant in the tricycle riding activity.

{¶ 21} This court addressed and rejected the argument that primary assumption of risk doctrine, which we referred to as the recreational liability exemption, bars recovery only from

a defendant who participates in the activity. *Whitaker v. Davis*, 12th Dist. Warren No. CA1996-07-060, 1997 Ohio App. LEXIS 287 (Jan. 27, 1997). We concluded that the rationale underlying the recreational liability exemption could be extended to non-participants because it would be illogical to require evidence of reckless or intentional conduct to recover against participants in the activity, yet allow recovery against non-participant defendants based on the lower standard of negligence. *Id.* at *8-9. Accordingly, we held that when a party is injured during a recreational activity, he or she must demonstrate that the defendant acted intentionally or recklessly. *Id.* at *9; *see also Lykins v. Fun Spot Trampolines*, 172 Ohio App.3d 226, 2007-Ohio-1800, ¶ 33-34 (12th Dist.).

{¶ 22} However, Aaliyah argues that the Ohio Supreme Court never explicitly extended the rule set forth in *Marchetti* or its progeny to non-participants in the activity. This is true. However, the court had no reason to do so because in each of those cases the defendant was a participant.

{¶ 23} *Marchetti*, *Thompson*, and *Gentry* do not compel us to reconsider this court's holding in *Whitaker*. The recreational activity exemption is merely a specific iteration of primary assumption of the risk to apply. As set forth in those Ohio Supreme Court cases, the rationale of primary assumption of risk in the context of the recreational activity exemption is that there are inherent risks in certain recreational activities such that injury may be inevitable. If a person voluntarily engages in such an activity they consent to those risks. The law therefore requires more culpability – reckless or intentional conduct – before liability will attach. Thus, it is the plaintiff's status as a participant or spectator in a recreational activity that determines whether the rule applies and not the defendant's status as a participant.

{¶ 24} While the Ohio Supreme Court has not had the opportunity to weigh in on this precise issue, other courts of appeal have extended the primary assumption of risk doctrine

to non-participant defendants. *See Ochall v. McNamer*, 10th Dist. Franklin No. 15AP-772, 2016-Ohio-8493; *Drury v. Blackston*, 3rd Dist. Allen No. 1-15-39, 2015-Ohio-4725; *Curtis v. Schmid*, 5th Dist. Delaware No. 07 CAE 11 0065, 2008-Ohio-5239; *Santho v. BSA*, 168 Ohio App.3d 27, 2006-Ohio-3656 (10th Dist.); *Rees v. Cleveland Indians Baseball Co.*, 8th Dist. Cuyahoga No. 84183, 2004-Ohio-6112; *Bundschu v. Naffah*, 147 Ohio App.3d 105, 2002-Ohio-607 (7th Dist.); *Karlovich v. Nicholson*, 11th Dist. Lake No. 98-L-097, 1999 Ohio App. LEXIS 4653. *But see Bastian v. McGannon*, 9th Dist. Lorain No. 07CA009213, 2008-Ohio-1449, ¶ 17.

**{¶ 25}** Finally, Aaliyah argues that that she could not have assumed the risks inherent in riding a tricycle because she was four years old. However, the Ohio Supreme Court has resolved that the age or maturity of an injured party is immaterial for purposes of the primary assumption of risk doctrine. *Gentry*, 2004-Ohio-379, syllabus. Accordingly, we find that the court did not err when it concluded that Aaliyah was barred from recovering against the Eagles based on primary assumption of risk.

<u>Attractive Nuisance Doctrine</u>

**{¶ 26}** Next, Aaliyah argues that the court erred in not applying the attractive nuisance doctrine because the court found that she was not a trespasser at the home. The Ohio Supreme Court adopted the attractive nuisance doctrine as enunciated in 2 Restatement of the Law 2d, Torts, Section 339 (1965):

> 1. A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if:
>
> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
>
> (b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to

such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or to otherwise protect the children.  * * *.

*Bennett v. Stanley*, 92 Ohio St.3d 35 (2001), syllabus.

{¶ 27} Aaliyah argues that the court erred because the attractive nuisance doctrine also applies to licensees and invitees based on 2 Restatement of the Law 2d, Torts, Section 343B, Comment b (1965), which provides:

[w]here the child is not upon the land as a trespasser, but is a licensee or an invitee, the possessor of the land is no less obligated to anticipate and take into account his propensities to inquire into or to meddle with conditions which he finds on the land, his inattention, and his inability to understand or appreciate the danger, or to protect himself against it.  Thus the rules stated in § 339, and the Comments and Illustrations to that Section, are equally applicable where the child is a licensee or an invitee.

However, the Ohio Supreme Court has not adopted Section 343B.  Nonetheless, it would make no difference in this case if the court had applied the attractive nuisance doctrine.

{¶ 28} It is undisputed that Aaliyah was an invitee at Thomas' home.  As an invitee, Thomas owed Aaliyah the duty to: (1) exercise ordinary care not to cause her injury by any act or by any activity while she is on the premises, and (2) to warn her of any known dangerous condition, if Thomas had reason to believe that Aaliyah did not know and would not discover such condition.  *See DiGildo v. Caponi*, 18 Ohio St.2d 125, 128 (1969).

{¶ 29} But if Aaliyah had been a trespasser on the property and the attractive nuisance doctrine applied, she would have been entitled to the same heightened standard of care as an invitee.  *Bennett*, 92 Ohio St.3d 35, syllabus.  Stated otherwise, Thomas would have had

an obligation to exercise reasonable care to eliminate or warn her of any danger.

{¶ 30} In this regard, the trial court found that the tricycle was not a dangerous instrumentality. In doing so, the court noted that Aaliyah had not submitted any contrary summary judgment evidence setting forth a genuine issue of material fact concerning the level of danger posed by the tricycle. For instance, Aaliyah did not submit any expert testimony concerning the design of the rear axle of the tricycle. Aaliyah did not appeal the court's finding that the tricycle was not a dangerous instrumentality.

{¶ 31} Aaliyah attempts to avoid the implications of failing to establish that the tricycle was a dangerous instrumentality by arguing that under the attractive nuisance doctrine there need not be a dangerous instrumentality, but only a foreseeable risk of danger. However, the summary judgment record does not support the conclusion that the tricycle presented a foreseeable risk beyond those risks inherent in riding a tricycle. First, the evidence showed that the tricycle had been used for years without injury by Thomas' daughter and the neighborhood children. Second, Aaliyah was using the tricycle under the direct supervision of her father. Third, Aaliyah failed to submit any summary judgment evidence that the tricycle's design presented a risk of injury beyond its inherent use. Accordingly, we find no error in the court's decision with respect to the attractive nuisance doctrine. We therefore overrule Aaliyah's assignment of error.

{¶ 32} Judgment affirmed.

S. POWELL, P.J. and PIPER, J., concur.